Argued and submitted February 9, peremptory writ issued March 30, 1982

# STATE ex rel HARMON,
*Plaintiff-Relator,*

*v.*

# BLANDING,
*Defendant.*

(SC 28206)

644 P2d 1082

Joyce J. Cresswell, Oregon City, argued the cause for plaintiff-relator. With her on the brief was Joan Robinson, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for defendant. With him on the brief were David B. Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

TANZER, J.

**TANZER, J.**

This mandamus proceeding arises from termination of pretrial diversion in a criminal case in which the plaintiff-relator is defendant and the defendant here is the circuit judge. The issue in this proceeding is whether, under ORS 135.901, when the district attorney decides to terminate diversion, the court is required to hold a hearing to determine if diversion should be terminated and, if so, the nature of the hearing.

Plaintiff was indicted and arraigned in circuit court on a charge of theft. (For convenience, we shall refer to plaintiff as "defendant" when referring to her in the original criminal proceedings.) One month later, defendant, with the advice and assistance of counsel and the district attorney, entered into a "PRE-TRIAL DIVERSION AGREEMENT and ORDER STAYING PROCEEDINGS." Among the many recitals in that document, it recites that it is understood and agreed between the defendant, her attorney and the district attorney that the criminal proceedings will be stayed for diversion pursuant to ORS 135.881 *et seq.,*

"[t]hat at any time prosecution may be resumed at the sole discretion of the State upon filing written notice thereof with the Court and serving a copy thereof upon the defendant through his attorney, said notice to specify the reasons for resuming prosecution",

that at the end of the diversion period, the defendant may move for dismissal with prejudice upon an affidavit of compliance, which the state may oppose or not. It further recites that the defendant waives her speedy trial rights, regardless of prejudice due to the stay, and she agrees to the use in trial of her admissions and other evidence which might be obtained as a result of the diversion agreement. The agreement then sets out certain conditions, including that defendant will give a statement of the offense detailing her and Ernie Vance's involvement in the offense and she will make monthly reports.[1] The agreement concludes

---

[1] "As a condition to the within Diversion Agreement the defendant agrees as follows:

\* \* \* \* \*

That he will, within thirty days of the date of this Agreement, give to Pat Detloff, Clackamas County Sheriff's Office, a full and complete written

with the signature of the defendant, her counsel and the prosecutor. The appended order stays the proceedings for nine months based upon the agreement of the parties and is signed by a circuit judge.

Two months later, the district attorney sent a letter to the circuit court giving the following "NOTICE":

"The State hereby elects to resume criminal prosecution in the above-entitled case on the following grounds:

(1)  The defendant did not give a truthful statement as agreed.

(2)  The defendant did not submit monthly reports as agreed.

"I hereby request that a date be set for the defendant's appearance forthwith to appear for further proceedings consistent with criminal prosecution."

The defendant appeared in circuit court and moved "for a hearing on the question of whether she had complied with the diversion agreement."[2] The court granted the

---

statement detailing his participation in the instant offense, that said statement is true and may be offered in evidence against him in any subsequent proceedings without objection on any grounds other than relevance.

\* \* \* \* \*

That he will submit a monthly written report to the District Attorney or Community Corrections (whichever is supervising) regarding his residence address, employment status and status of restitution payments (if any are due).

\* \* \* \* \*

That the defendant will give a truthful and complete statement to Clackamas County Sheriff's Office, forthwith, regarding the involvement of co-defendant, Ernie Vance, and will agree to waive her 5th amendment privilege and testify in behalf of the State at his trial."

Some of the confusion as to gender results from use in part of a printed form. We do not mean to approve or disapprove of the forms used in these proceedings.

[2] The body of the motion states:

"Defendant moves the court for an order directing that a hearing before the court be held to determine whether or not the defendant has complied with the terms of her diversion agreement.

"Defendant further moves the court for an announcement on the following questions with regard to such hearing:

(1)  Who has the burden of proof?

(2)  What is the standard of proof?

(3)  In general, what protections are due defendant in such hearing?"

motion. After the case was transferred to the defendant-judge for further proceedings, he denied the motion for a hearing.

Defendant moved for reconsideration of the denial of a hearing. Her lawyer's supporting affidavit asserted that upon a hearing she would offer evidence that the defendant gave a statement to a detective from the district attorney's office admitting that she had paid money for a tractor she knew was stolen, but denying any culpable involvement by Ernie Vance. The affidavit also asserted

> "[t]hat the Defendant misunderstood with whom she was to check in monthly; that she had intended to check in with the person supervising her community service project; that one month had not yet expired when the District Attorney sent notice of diversion revocation; and that the diversion agreement is unclear as to who is to receive the reports."

Reconsideration was denied and this mandamus proceeding followed.

■ First, plaintiff contends that she is entitled to a hearing on whether she had complied with the diversion agreement because the first order allowing the motion for a hearing had established the "law of the case." She cites *R.L.K. and Co. v. Tax Commission,* 249 Or 603, 608, 438 P2d 985 (1968), in which binding effect was given to "an adjudication of issues which have culminated in a final [judgment or] decree," and *Wampler v. Sherwood,* 281 Or 261, 574 P2d 319 (1978), in which it was held that where the parties acquiesce concerning the law to be applied in a trial, they are foreclosed from attacking the ruling on appeal. This is not such a case.

■ Here, the court, acting through different judges, changed its institutional mind. At the very least, a court is not barred from changing a ruling which it believes to be erroneous if neither party has been prejudiced beyond simply ending up on the losing side of the ruling. Otherwise, motions to reconsider would be less common. Here, the court properly reconsidered its ruling. *See Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707 (1955).

Plaintiff's next contention is that a judicial hearing is required by the implications of the diversion statutes,

ORS 135.881 to 135.901. On their face, those statutes place the responsibility for offering and terminating diversion in the district attorney. The responsibility assigned to the court is largely passive: the court holds proceedings in abeyance during the course of diversion, dismisses proceedings upon successful completion of diversion or resumes proceedings in the event of termination or unsuccessful completion. ORS 135.886 governs the initiation of diversion. It provides:

"(1) After an accusatory instrument has been filed charging a defendant with commission of a crime other than driving while under the influence of intoxicants as defined in ORS 487.540, and after the district attorney has considered the factors listed in subsection (2) of this section, if it appears to the district attorney that diversion of the defendant would be in the interests of justice and of benefit to the defendant and the community, the district attorney may propose a diversion agreement to the defendant the terms of which are established by the district attorney in conformance with ORS 135.891. A diversion agreement under this section is not available to a defendant charged with the crime of driving while under the influence of intoxicants as defined in ORS 487.540."[3]

---

[3] Subsection (2) provides the factors which must be considered by the district attorney:

"In determining whether diversion of a defendant is in the interests of justice and of benefit to the defendant and the community, the district attorney shall consider at least the following factors:

(a) The nature of the offense; however, the offense must not have involved injury to another person;

(b) Any special characteristics or difficulties of the offender;

(c) Whether the defendant is a first-time offender; if the offender has previously participated in diversion, according to the certification of the Department of Justice, diversion shall not be offered;

(d) Whether there is a probability that the defendant will cooperate with and benefit from alternative treatment;

(e) Whether the available program is appropriate to the needs of the offender;

(f) The impact of diversion upon the community;

(g) Recommendations, if any, of the involved law enforcement agency;

(h) Recommendations, if any, of the victim;

(i) Provisions for restitution; and

(j) Any mitigating circumstances."

ORS 135.891 provides conditions which may be included in a diversion agreement:

"A diversion agreement carries the understanding that if the defendant fulfills the obligations of the program described therein, the criminal charges filed against the defendant will be dismissed with prejudice. It shall include specifically the waiver of the right to a speedy trial. It may include, but is not limited to, admissions by the defendant, stipulation of facts, stipulation that depositions of witnesses may be taken pursuant to ORS 136.080 to 136.100, payment of costs and restitution, performance of community service, residence in a halfway house or similar facility, maintenance of gainful employment, and participation in programs offering medical, educational, vocational, social and psychological services, corrective and preventive guidance and other rehabilitative services."

ORS 135.896 provides that if the parties agree to diversion, "the court shall stay further proceedings for a definite period."[4]

ORS 135.901 provides for termination of diversion and for further proceedings following completion or termination:

"(1) If the district attorney finds at the termination of the diversion period or any time prior thereto that the divertee has failed to fulfill the terms of the diversion agreement, the district attorney shall terminate diversion and the court shall resume criminal proceedings. However, if the former divertee is adjudicated guilty as a result thereof, the court may take into consideration at the time of the sentencing any partially successful fulfillment by such person of the terms of agreement.

"(2) If the district attorney informs the court at the termination of the diversion period that the defendant has fulfilled the terms of the diversion agreement, the court shall dismiss with prejudice the criminal charges filed against the defendant."

---

[4] ORS 135.896:

"If the district attorney elects to offer diversion in lieu of further criminal proceedings and the defendant, with the advice of counsel, agrees to the terms of the proposed agreement, including a waiver of the right to a speedy trial, the court shall stay further criminal proceedings for a definite period. The stay shall not exceed 270 days in the case of a defendant charged with commission of a felony, and shall not exceed 180 days in the case of a defendant charged with the commission of a misdemeanor. If the defendant declines diversion, the court shall resume criminal proceedings."

ORS 135.901 gives no support for the contention that the trial court has a mandatable legal duty to decide whether a defendant has complied with a diversion agreement as sought by this alternative writ. The statute specifically assigns authority to the district attorney to find that a divertee has not complied with the diversion agreement. In such case, the statute authorizes the district attorney, not the court, to terminate diversion. The only responsibility assigned to the court is that it "shall resume criminal proceedings" and will take the diversion into account at sentencing, if any. On its face, the statute gives to the district attorney the authority which this plaintiff would have us direct the court to exercise.

Plaintiff contends that a different meaning results when ORS 135.901 is read together with ORS 135.891, which provides that

> "[a] diversion agreement carries the understanding that if the defendant fulfills the obligations of the program described therein, the criminal charges filed against the defendant will be dismissed with prejudice. * * *"

She contends that this provision implies a responsibility of the court to act only if it finds the agreement not to have been complied with. Assuming for argument that there is merit in plaintiff's contention that it is possible to find a "conflict between ORS 135.891 and ORS 135.901," we would be guided by the intent of the legislature in resolving that conflict.

The legislative history provided by defendant indicates a legislative intention contrary to plaintiff's reading of the statutes. Diversion in one form or another has always been practiced informally. The 1977 session of the legislature considered several proposals to establish formal procedures for diversion in lieu of completed prosecution. Most consideration was given to House Bill 2247, as proposed by the Governor's Task Force on Corrections, which provided that diversion was to be court administered and supervised. The debate before the House Committee on Judiciary focused on whether diversion should be formalized at all and, if so, whether it should be under the control of the courts or of the prosecutors. Representatives of the

judicial branch were unenthusiastic about the prospect of administering the program. Representatives of the prosecution insisted that a diversion program should operate, if at all, under the discretion of the district attorneys without supervision or intervention by the courts. The result was that the court-oriented proposal of HB 2247 was gutted and a prosecution-based proposal substituted. All references to pretermination hearings by either the court or the district attorney were deleted. All references to court orders were deleted. The thoroughness of the change and clarity of the legislature's resolve can be readily seen in a comparison of ORS 135.901 as proposed in HB 2247 and as changed and adopted.

HB 2247

### AS PROPOSED

"(1) If the district attorney finds at the end of the stay of proceedings ordered pursuant to section 4 of this Act that the defendant has failed to fulfill the terms of the diversion agreement without good cause, the district attorney shall notify the defendant of his determination.

"(2)(a) If after notifying the defendant thereof and affording the defendant an opportunity to be heard with regard thereto, the district attorney becomes convinced that the defendant has failed to fulfill the terms of the diversion agreement without good cause, the district attorney shall move the court for an order resuming the criminal proceedings.

"(b) Upon the filing by the district attorney of a motion described in paragraph (1) of this subsection, the court shall order the resumption of the criminal proceedings.

"(3) The court shall cause notice of the defendant's participation in the diversion disposition procedures described in this Act to be sent to the State Court Administrator. Upon request, the administrator shall make available the information contained in the notice to any court that subsequently considers diversion for the defendant."

### AS ENACTED

"(1) If the district attorney finds at the termination of the diversion period or any time prior thereto that the divertee has failed to fulfill the terms of his diversion agreement, he shall terminate diversion and the court shall resume criminal proceedings. However, if the former divertee is adjudicated guilty as a result thereof, the court may take into consideration at the time of the sentencing any partially successful fulfillment by such person of the terms of his agreement.

"(2) If the district attorney informs the Court at the termination of the diversion period that the defendant has fulfilled the terms of the diversion agreement, the court shall dismiss with prejudice the criminal charges filed against the defendant.

"(3) A record of the fact that an individual has participated in diversion shall be forwarded to and kept by the State Court Administrator, and shall be made available to any district attorney who subsequently considers diversion of such person."

■    The implication is clear that the legislature intended that all decisional discretion (other than sentencing) be vested in the district attorney and that the court simply suspends, resumes or dismisses the proceedings in consequence of the district attorney's decisions. The legislative history does not support plaintiff's request for a circuit court hearing to determine whether she has complied with the diversion agreement.

■    A more limited hearing may be required by the statutes, however. Although the statutes place decisional responsibility for diversion in the district attorneys, they do not require that trial courts act automatically at the direction of the prosecutors. Under ORS 135.896, the trial court is required to stay criminal proceedings upon agreement of the parties to diversion. It may not resume proceedings unless two events specified in ORS 135.901(1) occur. Under that statute, the trial court has no authority to resume the proceedings unless it is preliminarily established that (1) the district attorney has found that the divertee has not fulfilled the terms of the diversion agreement, and (2) the district attorney has terminated diversion. These are stated as separate events because it is possible for a district attorney to find noncompliance but, nevertheless, for reasons of discretion, continue the diversion program. Similarly, if the district attorney terminates diversion, as he has authority to do, but he has not made a finding of noncompliance, the court would have no authority to resume the suspended proceedings.

We do not suggest that a court, when asked to resume proceedings, has decisional authority beyond determining whether it has been established that the district attorney has found noncompliance and has terminated the diversion. Statutory responsibility to make findings regarding failure to fulfill terms of the diversion agreement is assigned solely to the district attorney and not to the court. On the other hand, the statute does not contemplate that the district attorney can make findings without any reasonable basis. The statutory word "find" describes a process of ratiocination rather than mere preference or whim. For a court to determine that a finding has been made, it must determine that the district attorney's act is actually a finding *i.e.,* a determination of fact based upon a

reasonable basis, satisfactory and persuasive to the district attorney, to believe the existence of that fact. The court need only determine whether a reasonable basis exists. It need not determine whether the district attorney's basis would persuade the court to come to the same finding, for those decisions are for the district attorney. When the district attorney seeks resumption of proceedings, he must establish that he has made a finding of noncompliance, that there is a reasonable basis for that act, and that he has terminated diversion.

The statutes prescribe no procedure for the establishment of these two facts. Obviously, an evidentiary hearing for judicial fact-finding as envisioned by this alternative writ of mandamus is not required, but some lesser procedure adequate for a fair determination of the existence of the requisite facts must be provided. If the district attorney notifies the court and the defendant that he has found noncompliance and has terminated the diversion and the defendant makes no challenge, the court may resume the proceedings without further inquiry. If the existence of findings or termination is disputed, however, the court may follow such procedures as will enable it to fairly determine the existence of the two requisite facts. That may be by submissions or testimony or in some other form appropriate to the nature of the case. We need not prescribe a uniform procedure at this time.

We do not address whether the district attorney's procedure whereby he finds facts or terminates diversion is subject to any form of procedural requirements or judicial review for lawfulness. *See, e.g.,* Davis, Administrative Law of the Seventies, ch 28, 605 (1976). That subject is not raised by a writ of mandamus to the circuit judge.[5]

Counsel for the plaintiff, in her commendably zealous and diligent representation, has offered a number of

---

[5] At oral argument a question was raised whether the decision of the district attorney to terminate diversion based on his finding of noncompliance with the diversion agreement was an "order" within ORS 183.310(5) and reviewable as such under ORS 183.484. As the parties had not raised or brief this issue and the petition for the writ of mandamus did not demand judicial review under those sections, we do not pursue the question in this opinion. For this reason, plaintiff's post-argument motion to file a supplemental brief on this point was denied.

theories in addition to law of the case and statutory construction for use by the court as a basis for a favorable decision. In view of our disposition of this case, we need not discuss our analysis of each of the theories that she has put forth.

A peremptory writ will issue directing the defendant to provide such further proceedings as will enable it to fairly determine, if challenged, whether the district attorney has found that the divertee has failed to fulfill the terms of her diversion agreement and has terminated diversion.