**Sandra GEZZI, Appellant (Defendant),**

v.

**STATE of Wyoming,
Appellee (Plaintiff).**

No. 89–275.

Supreme Court of Wyoming.

Oct. 5, 1990.

Marvin J. Johnson of Edwards & Johnson, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne and Paul S. Rehurek, Sr. Asst. Attys. Gen., Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Appellant Sandra Gezzi appeals from a judgment and sentence of the district court which sentenced her to three years of probation. She pled guilty to two counts of uttering forged checks in violation of W.S. 6–3–602(a)(iii) (June 1988 Repl.). The issues raised in this appeal address the constitutionality of W.S. 7–13–301 (June 1987

Repl.). All of the issues raised are disposed of by the court's opinion in *Billis v. State*, etc., No. 88–250, 800 P.2d 401 (Wyo. Oct. 5, 1990). Therefore, we affirm the district court's judgment and sentence.

Gezzi contends for these propositions:

I. Does the prosecutorial veto contained in § 7–13–301 (W.S.1977) violate the constitutional mandate of separation of powers?

II. Was the prosecutorial veto provision of § 7–13–301 (W.S.1977) unconstitutionally enacted?

III. Did the prosecutor's refusal to consent to first offender treatment for appellant violate her rights to due process?

IV. Did the prosecutor's arbitrary and capricious refusal to consent to sentencing pursuant to § 7–13–301 violate article 1, § 2 and article 1, § 7 of the Wyoming Constitution?

We reject the first issue, violation of separation of powers, for the reasons discussed in *Billis*, at 412–427. The second issue, concerning enactment of the statute, is disposed of in *Billis*, at 427–433.

■ As to the third issue, Gezzi has made no individual argument, but, rather, incorporated by reference materials from briefs in other cases which have now been decided in *Billis*. Although we do not usually permit such matters to be incorporated by reference, we have made an exception here. *See Cambio v. State*, No. 89–169, 800 P.2d 482 (Wyo. Oct. 5, 1990). Since Gezzi made no individual argument, and since we have decided in *Billis* that the statute does not operate in such a manner as to offend the constitutional rights of defendants, we can only conclude that Gezzi's due process rights were not offended in any manner by W.S. 7–13–301.

■ Finally, Gezzi claims that the prosecutor's decision was arbitrary and capricious. We held in *Billis* that the prosecutor's control of a prosecution is committed to his sound discretion and we will not interfere with the exercise of that discretion unless it is based on suspect factors such as race, religion, or other arbitrary classification. *Billis*, at 465. This record raises no question in that regard.

The judgment and sentence of the district court is affirmed.

MACY, J., files a concurring opinion.

URBIGKIT, C.J., files a dissenting opinion.

MACY, Justice, concurring.

I concur simply because *Billis v. State*, 800 P.2d 401 (Wyo. Nos. 88–250, 88–304, 88–310, 88–311, 88–312, and 89–4, October 5, 1990), is controlling. I am, however, still firmly convinced that the power and duty to adjudicate should be exclusively in the judiciary. See my dissenting opinion in *Billis*.

URBIGKIT, Chief Justice, dissenting.

I do now and will continue to dissent in this case and others similarly postured as I did in *Billis v. State*, 800 P.2d 401 (Wyo. 1990) (Nos. 88–250, 304, 310, 311, 312 and 89–4, 10/5/90), and all of its ignoble progeny. Although I judicially subscribe to stare decisis, its application will never permit me to disregard the Wyoming Constitution.[1]

Each of these additional cases provide a separate incorrectly adopted, ill-advised justification, while this court's majority continues to strive rigorously to defend a constitutionally and precedentially unsupportable position. This case extends further in announcing a most curious supposition currently found in case law. In addressing discretion of the State to authenticate invasion into the judicial function of sentencing following guilt determination, this court's majority now acclimatizes that exercised discretion with racial non-discrimination.

In the first place, the function is not prosecutorial diversion—it is embedded in the judicial sentencing responsibility.

---

**1.** Compare, however, Powell, *Stare Decisis and Judicial Restraint*, 47 Wash. & Lee L.Rev. 281 (1990).

Without citation of authority, the majority then states:

> We will not interfere with the exercise of that discretion [to apply a sentencing veto] unless it is based on suspect factors such as race, religion, or other arbitrary classification.

This court has never previously categorized exercise of discretion as a racial, religious, or sex discrimination concept, nor has the array of cases cited by the majority in *Billis*. In those cases, discretion could be related to the present fundamental law of Wyoming which we defined in *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986) (citation omitted), and have since frequently repeated:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

Exercised discretion, justified or improvident, is not confined to civil rights as a concept. Conversely, civil rights violations do not involve discretion, but instead, deliberate mutilation of the fundamental interests of the American society and our constitutional provisions. About the only thing that the prosecutorial veto cases are not are civil rights litigation.

The majority has switched justification and logic of the administrative agency action from an arbitrary and capricious criteria to a civil rights discrimination analysis. The proper test is not color, race, or sex, but arbitrary and capricious review, *State v. Leonardis*, 73 N.J. 360, 375 A.2d 607, 618 (1977) (*Leonardis* II), (patent abuse of discretion), as a judicial inquiry in analysis of administrative action. In *State v. Dalglish*, 86 N.J. 503, 432 A.2d 74, 79–80 (1981) (footnote omitted), a case confidently cited by the majority in *Billis*, that court said:

> As we stated in *Leonardis II, supra*, 73 N.J. at 381, 375 A.2d 607, judicial review of a prosecutor's decision whether or not to suspend criminal charges infringes on both the Legislature's power to define crimes and the Executive's responsibility to enforce the laws and therefore must be performed with sensitivity. Since the Legislature has established a PTI [pretrial intervention] program with judicial review, the trial court correctly concluded that the problem of judicial interference with legislative authority has been eliminated. Nevertheless, our concern about unwarranted interference with prosecutorial prerogative persists as a reason for requiring that a trial court find a patent abuse of discretion before ordering enrollment in a PTI program without prosecutorial consent.

> Retention of the *Leonardis II* standard does not mean, as the trial court presumed, that arbitrary and capricious action on the part of prosecutors not amounting to a patent and gross abuse of discretion will go unchecked. As discussed in the previous section, we stated in *Bender* that a trial court should remand an application to the prosecutor if it finds that the prosecutor's denial of the application was an abuse of his discretion, even if the abuse was not patent and gross. See [*State v.*] *Bender, supra*, 80 N.J. [84] at 94, 402 A.2d 217 [ (1979)]. Because a remand interferes less with prosecutorial authority than does an order suspending prosecution, this procedure does not raise the same concerns about the separation of powers that necessitated a narrower standard of review in *Leonardis II*. *Cf. Dunlop v. Bachowski*, 421 U.S. 560, 575 & n. 12, 95 S.Ct. 1851, 1861 & n. 12, 44 L.Ed.2d 377 (1975) (preferable course when trial court finds that decision not to bring suit was arbitrary and capricious is to remand, because an order to initiate suit would raise separation of powers problems). By remanding upon finding an abuse of discretion, courts can assure prosecutorial compliance with procedural guidelines and observance of the legislative standards for PTI and protect defendants against arbitrary and irrational decisionmaking without supplanting the prosecutor's primacy in determining whether PTI is appropriate in individual cases.

*See also State v. Collins*, 90 N.J. 449, 448 A.2d 977 (1982).

In a related inquiry defining Oregon law, the court responsibility was to "determine whether a reasonable basis exits [for the administrative decision]." *State ex rel. Harmon v. Blanding*, 292 Or. 752, 644 P.2d 1082, 1088 (1982). That review obviously addresses the normal administrative agency arbitrary and capricious criteria for exercised discretion. The Kansas court described the pretrial diversion discretion rule similarly in *State v. Greenlee*, 228 Kan. 712, 620 P.2d 1132, 1139 (1980) by stating that "[t]he prosecutor, although possessing wide discretion is not immune from judicial review of the exercise of that discretion for arbitrariness." *See Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, *reh'g denied* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978).

The California court in *Esteybar v. Municipal Court for Long Beach Judicial Dist. of Los Angeles County*, 5 Cal.3d 119, 95 Cal.Rptr. 524, 528–29, 485 P.2d 1140, 1144–45 (1971), stated:

> Under our system of separation of powers, we cannot tolerate permitting such an advocate to possess the power to prevent the exercise of judicial discretion as a bargaining tool to obtain guilty pleas. A defendant is entitled to have an independent determination of whether he should be held to answer on a felony or a misdemeanor, and this is not possible when the exercise of judicial discretion depends on the "pleasure of the executive." (*[People v.] Tenorio*, [3 Cal.3d 89] at p. 93, 89 Cal.Rptr. 249, 473 P.2d 993 [(1970)].)

> \* \* \* \* \* \*

> \* \* \* Article III, section 1 of the California Constitution provides: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."

What this case teaches is that uncontrolled prosecutorial meanness, in overreaching advocacy control of the intrinsic judicial obligation for criminal offense sentencing, is ignored in real terms of abuse of discretion and is disconnected from its violation of the separation of powers under the Wyoming Constitution.

The prosecutor, as assisted by this court in conviction affirmation, *Gezzi v. State*, 780 P.2d 972 (Wyo.1989), sent Mr. Gezzi off to the Wyoming State Penitentiary for alleged "bad touching" and sexual abuse of his children. Unfortunately, that rehabilitative action under Wyo. Const. art. 1, § 15, did not leave his wife and children with sufficient resources for adequate supply of food under the resulting DPASS-welfare status. Sandra Gezzi, without those resources to supplement food stamps and welfare funds for the family, forged eleven checks totalling $488.41 [2] on the account of her incarcerated husband to local grocery and general merchandise stores. The account was not favored by sufficient funds for check clearance. Immediately detected and arrested, Sandra Gezzi, without any prior criminal involvement, entered into a plea bargain for a guilty plea to felony offenses for two of the grocery checks with dismissal of eight others and the apparent disappearance of the eleventh. Probation was not opposed by the prosecutor with restitution to be provided. Her explanation:

> THE DEFENDANT: Both of them were checks that I wrote on a closed account of my husband's. My husband is in the Wyoming State Penitentiary. I wrote them both for food. It was getting towards the end of the month and my food stamps had run out.

> THE COURT: So you went some place and obtained food by tendering a check drawn on an account that you knew was closed?

> THE DEFENDANT: That's correct, sir.

> THE COURT: Did you sign your husband's name?

> THE DEFENDANT: Yes, I did.

Counsel for Sandra Gezzi argued for a first offender status and a W.S. 7–13–301

---

**2.** Sandra Gezzi was ordered to make full restitution in the amount of $510.41.

non-felony conviction application, but the representative of the district attorney's office exercised a prosecutorial veto. The explanation found in Sandra Gezzi's trial brief was:

> In fact, during discussions with the prosecutor in this case, counsel asked what authority existed for the interpretation that multiple offenses precluded first offender status. The prosecutor stated he needed no authority; the Legislature left the decision up to the prosecutor, and that is how he chose to interpret the statute. Furthermore, the prosecutor's decision to disallow first offender treatment where a defendant stands upon his or her rights punishes the exercise of those rights and offends the Constitutions of the United States and Wyoming.

The explanation given by the prosecutor at the sentencing hearing, after plea had been entered and accepted, was:

> [PROSECUTOR]: Your Honor, it's the State's position that when 301 is requested and it's not given it doesn't necessarily need to be a part of a charge concession, that it not or that it be given. This is not a situation where Mrs. Gezzi has pled guilty to all the charges, and in this case the State dropped nine counts, and I would submit that should we have to come back on this because of the question of 301 that we need to start from the very beginning again with all eleven counts and that's simply what I meant to indicate. Our file indicates that nine counts were dropped, that she would plead to two and the State would not object to probation and there would be no 301, and I would submit that that is a charge concession.

I ask the question about this welfare supported housewife who is left to support her family on public funds after the societal proclivity for incarceration is vented upon the wage earner: What discretion was exercised in any rational fashion and how can society be benefited in forcing upon this woman the status of a convicted felon? The result is particularly obnoxious to me since, here again, the prosecutorial advocate makes the decision without the good sense to relate demanded punishment of a felony status to any beneficial result to anyone, either in deterrence or societal benefit.

I totally refuse to limit characterization of properly exercised discretion to constitutional discrimination based on race, color, or creed. How about a single parent trying to feed her family until the incarcerated father can return to assist in maintenance by wage earner income?

Should Sandra Gezzi never want to have a weapon for her family's protection, never have the desire to vote, or never want to try to advance her own capabilities in education and employment, it may not matter. It does matter to me, because it is wrong to give the advocate a big slice of the judicial sentencing authority and discretion to be exercised by veto without any rational justification.

It matters to me because we give power to the prosecutor to determine indiscriminately punishment without the judicial responsibility to "support, obey and defend" the Constitution and to do justice impartially. The advocate and the judiciary share very different responsibilities in the justice delivery system. Here we give a significant share of that judicial power without assessing judicial responsibility to the litigative advocate. It is both philosophically and constitutionally wrong.

Consequently, I again respectfully dissent.

