Al DICKSON, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 94–257.

Supreme Court of Wyoming.

Sept. 27, 1995.

Maynard D. Grant of Grant & Newcomb, Cheyenne, for Appellant.

William U. Hill, Attorney General; D. Michael Pauling, Senior Assistant Attorney General, for Appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The dispositive issue in this case, which is not addressed by the parties, is the failure of the trial court to "[e]nter an adjudication of guilt and conviction," as required by Wyo. Stat. § 7–13–301(c)(i) (1987), or an "adjudication as to each offense," as required by Wyo. R.Crim.P. 32(b)(1)(D). The other primary issue we address, because the dispositive issue is correctable, is whether, in invoking Wyo.Stat. § 7–13–301 (1987) in a criminal case, the trial court could require restitution as a condition of probation. Collateral issues are asserted including whether, if restitution properly was required, the record demonstrates a willful failure to pay restitution; whether the trial court had authority to impose consecutive periods of probation totaling more than five years; whether the district court had authority to impose consecutive periods of probation; and whether Al Dickson (Dickson) had successfully completed the second of the consecutive periods of probation. Dickson argues from different possible scenarios, but we treat with the actual events of the case in upholding the Order Revoking Probation entered in the trial court. The record demonstrates Dickson's probation revocation proceeding was commenced within the three-year period of probation imposed on the first count of the information filed against him; the revocation was valid; and other contentions made by Dickson are moot in light of what occurred. We reverse and remand the Order Revoking Probation for compliance with Wyo.Stat. § 7–13–301(c)(i) and Wyo.R.Crim.P. 32(b)(1)(D), but we find no other error.

In his Brief of Appellant, Dickson states these issues:

I. Whether the district court exceeded its authority under W.S. 7–13–301 when it imposed a probationary term in excess of five years?

II. Whether the district court exceeded its authority under W.S. 7–13–301 when it imposed consecutive sentences of probation?

III. Whether the district court exceeded its authority under W.S. 7–13–301 when it imposed restitution as a condition of probation?

IV. Whether the district court's finding that Appellant wilfully violated his restitution obligation was supported by sufficient evidence?

V. Whether the district court abused its discretion when it failed to credit Appellant with completion of the second probationary sentence?

The State of Wyoming sets forth only three issues in its Brief of Appellee:

I. Was the payment of restitution properly made a condition of Appellant's probation?

II. Did the district court have sufficient evidence from which to reasonably conclude that Appellant had willfully failed to pay restitution?

III. Is correction of the district court's initial probation order or its order of revocation required if Appellant's probation was properly revoked, and should the district court's initial order otherwise only be corrected so as to give effect to the parties' plea agreement?

In January of 1987, Dickson was charged with three counts of making false statements in connection with the sale of securities in violation of Wyo.Stat. § 17–4–101(a)(ii) (1989)[1] and three counts of selling unregistered securities in violation of Wyo.Stat. § 17–4–107(a)(i) (1989).[2] The complaint re-

1. Wyo.Stat. § 17–4–101 (1989) provides, in pertinent part:

(a) It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
(i) To employ any device, scheme, or artifice to defraud;
(ii) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements

made, in the light of the circumstances under which they are made, not misleading; or
* * *.

2. Wyo.Stat. § 17–4–107 (1989) provides, in pertinent part:

(a) It is unlawful for any person to offer or sell any security in this state unless:
(i) It is registered under this act [§§ 17–4–101 through 17–4–129]; or * * *.

flected Dickson had solicited approximately $1 million to be used for the operation of two existing oil wells, but he spent nearly all the money he raised in unrelated enterprises. In connection with the solicitations, he falsely represented that he was a fifty-percent investor in the operation. Each investor signed a "sales agreement" which constitutes a security under Wyoming law. Dickson was arraigned on the charges in the original information on February 13, 1987 and entered pleas of not guilty to all counts of the information. He negotiated a plea agreement and, pursuant to that agreement, on October 27, 1987, he entered pleas of *nolo contendere* to all four counts of an amended information, each charging the selling of an unregistered security in violation of Wyo.Stat. § 17-4-107(a)(i). The State, in accordance with the agreement, dismissed all other charges. The trial court deferred acceptance of this plea agreement pending completion of a presentence investigation and report.

At some point between the arraignment on the new charges and the sentencing, it appears an accord was reached that Dickson could be considered a first offender under Wyo.Stat. § 7-13-301 (1987).[3] In the course of the sentencing hearing on March 28, 1988, the trial court agreed to treat Dickson as a

first offender under Wyo.Stat. § 7-13-301. The Judgment and Order of the Court which was entered provided for Dickson to be treated as a first offender and stated:

IT IS HEREBY ORDERED that the nolo plea herein is accepted and not entered as to the crime charged in the Information filed herein and that sentencing in this matter shall be deferred and the Defendant placed on probation pursuant to W.S. 7-13-301, 1977 Republished Edition and the Defendant shall be permitted to go at large upon his own recognizance, UPON THE FOLLOWING TERMS AND CONDITIONS, TO WIT:

1. The Defendant is placed on probation to and shall be under the supervision of the State Probation Officer * * *;

Said supervision may be transferred to the State of Texas if said supervision is accepted by the State under the Interstate Compact;

\* \* \* \* \* \*

2. The probation shall continue for a period of three (3) years as to each count, to be served consecutively, from the date first appearing on this Order or until further order of this Court hereinafter according to law;

---

3. Wyo.Stat. § 7-13-301 (1987) provides:
 (a) If a person who has not previously been convicted of any felony is charged with or is found guilty of or pleads guilty to any misdemeanor except any second or subsequent violation of W.S. 31-5-233 or any similar provision of law, or any felony except murder, sexual assault in the first or second degree or arson in the first or second degree, the court may, with the consent of the defendant and the state and without entering a judgment of guilt or conviction, defer further proceedings and place the person on probation for a term not to exceed five (5) years upon terms and conditions set by the court. The terms of probation shall include that he:
 (i) Report to the court not less than twice in each year at times and places fixed in the order;
 (ii) Conduct himself in a law-abiding manner;
 (iii) Not leave the state without the consent of the court; and
 (iv) Conform his conduct to any other terms of probation the court finds proper.
 (b) If the court finds the person has fulfilled the terms of probation and that his rehabilitation has been attained to the satisfaction of the court, the court may at the end of five (5)

years, or at any time after the expiration of one (1) year from the date of the original probation, discharge the person and dismiss the proceedings against him.
 (c) If the defendant violates a term or condition of probation at any time before final discharge, the court may:
 (i) Enter an adjudication of guilt and conviction and proceed to impose sentence upon the defendant if he previously pled guilty to or was found guilty of the original charge for which probation was granted under this section; or
 (ii) Order that the trial of the original charge proceed if the defendant has not previously pled or been found guilty.
 (d) Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for any purpose.
 (e) There shall be only one (1) discharge and dismissal under this section or under any similar section of the probationary statutes of any other jurisdiction.
(Subsection (a)(v), providing for restitution to each victim, was added to the statute by the legislature subsequent to Dickson's prosecution in this case.)

3. The Defendant shall conform to the rules, regulations and conditions imposed by law, by the court, and by the Probation Officer and shall sign a Probation Agreement * * *;

\* \* \* \* \* \*

5. The Defendant shall make complete restitution in the amount of one hundred thousand dollars ($100,000.00) to be paid on a quarterly basis ($2,250.00) each quarter until paid in full, according to a plan of restitution and distribution, to be prepared by the Department of Probation and Parole and Defendant's attorney, and to be submitted to the Court for approval;

\* \* \* \* \* \*

IT IS FINALLY ORDERED by the Court that at the expiration of a period of three (3) years as to each count or a total of twelve (12) years, or at any time after the expiration of one (1) year from the date of the original probation, discharge the person and dismiss the proceedings against him, provided however, that if at any time the Court shall have just cause to believe that the Defendant has failed to comply with the terms and conditions of this Order, the Court shall cause to be issued a warrant for the apprehension and arrest of the Defendant and require him to be brought before this Court and thereupon inquiry shall be made into his conduct since his probation and if satisfied from such inquiry that the Defendant has violated the terms and conditions of this Order, then the Court shall have the power to enter an adjudication of guilt and conviction and proceed to impose sentence upon the Defendant.

Dickson made no objection to this disposition at that time, and it would be difficult to conceive of any reason for him to protest this favorable disposition.

Dickson was permitted to return to his employment in Texas, and he began making the required restitution payments. The first payment was made in late October of 1988, and another was made in mid-February of 1989. Dickson did not make the next three payments which were due in April, July, and October of 1989. Because of the failure to make the restitution payments, the State commenced revocation proceedings by the filing of a Petition for Order to Show Cause Why Probation Should Not Be Revoked on February 1, 1990. At that time, the State also filed a Petition for Bench Warrant and the Order for Bench Warrant was issued. The record does not tell us why with specificity, but the return on the Bench Warrant shows it was not served until July 21, 1994. Dickson's version was that he had been arrested earlier and had been assured by officers of the sheriff's department in Texas that the matter had been resolved. The transcript of proceedings on July 25, 1994 contains this testimony:

THE COURT: And you were extradited to Wyoming?

DICKSON: No, sir.

THE COURT: So you are telling us about conversations that you had between yourself and the Texas authorities?

DICKSON: Yes, sir. They told me that when I was arrested, I was out on bond, that I had to report every 90 days. And in their words, to see if Wyoming wanted to extradite me.

I came back every 30 days for 3 months in a row, 90 days. They said, you are released, Texas is done with you. So I obviously—I assume they knew what they were talking about.

So that's what I did. I stayed at the same address and still currently, three years.

In response to this contention, the prosecutor explained his office had never discontinued pursuing Dickson's arrest, but that procedural problems with respect to the pre-signed waiver of extradition and the later execution of the extradition warrant inhibited insisting upon his return to Wyoming.

The revocation hearing was held on July 25, 1994. The trial court found Dickson had willfully violated the requirements for restitution contained in the prior order and Dickson's probation on Count I. In the Order Revoking Probation, the court, by clear implication, entered an adjudication of guilt and conviction and directed that Dickson be sentenced to a term of not less than two and

one-half, nor more than three, years. The court ordered that the remaining conditions with respect to the other three counts reflected in the judgment and order of the court remain in full force and effect and become enforceable upon his release from confinement. Dickson appeals from the Order Revoking Probation.

■ We begin with Dickson's contention that the district court exceeded its authority when it imposed restitution as a condition of probation. A series of Wyoming cases demonstrates that requiring restitution as a condition of probation for a defendant granted first offender status is discretionary and not uncommon. *Kahlsdorf v. State,* 823 P.2d 1184 (Wyo.1991); *Gezzi v. State,* 800 P.2d 485 (Wyo.1990); *Heggen v. State,* 800 P.2d 475 (Wyo.1990); *Hudson v. State,* 800 P.2d 471 (Wyo.1990); *Mollman v. State,* 800 P.2d 466 (Wyo.1990); *Billis v. State,* 800 P.2d 401 (Wyo.1990). These cases are consistent with those in other jurisdictions where courts have held that, even in the absence of a statute on point, the general authority of the court to impose reasonable probation and parole conditions includes the authority to require restitution. *Shenah v. Henderson,* 106 Ariz. 399, 476 P.2d 854 (1970); *Henry v. State,* 77 Ga.App. 735, 49 S.E.2d 681 (1948); *Coles v. State,* 290 Md. 296, 429 A.2d 1029 (1981); *Commonwealth v. Walton,* 483 Pa. 588, 397 A.2d 1179 (1979); *State v. Wilson,* 274 S.C. 352, 264 S.E.2d 414 (1980); *Huggett v. State,* 83 Wis.2d 790, 266 N.W.2d 403 (1978). While not definitive with respect to restitution, WYO.STAT. § 7–13–301(a)(iv) affords general authority to the court to include in the terms of probation the requirement that the accused conform his conduct to any other terms of probation the court finds proper.

We would be remiss in not noting that the initial disposition of Dickson's case in the trial court was extremely favorable to Dickson. He was afforded the opportunity to enter pleas of *nolo contendere,* which had the effect of protecting him from the use of his plea as an admission in a civil case. *State v. Steele,* 620 P.2d 1026 (Wyo.1980). Even though the record alludes to ninety-eight victims, he entered pleas to charges involving only four of those victims. The record also demonstrates that the restitution which was required was only a fraction of the amount he actually obtained in the implementation and execution of his scheme. The arrangement ultimately consummated affords him more than twelve years to make the required restitution. It is understandable that Dickson initially made no objection to the disposition of his case.

■ We then turn to whether there was sufficient evidence to support the district court's finding that he willfully violated his probation by failing to pay restitution. Dickson cites *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), for the proposition that, in revoking probation for failure to pay restitution, a court must inquire into the reasons for the failure to pay. The court in *Bearden,* 461 U.S. at 668, 103 S.Ct. at 2070–71, said:

> If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection. See ALI, Model Penal Code § 302.2(1) (Prop.Off.Draft 1962.). Similarly, a probationer's failure to make sufficient bona fide efforts to seek employment or borrow money in order to pay the fine or restitution may reflect an insufficient concern for paying the debt he owes to society for his crime. In such a situation, the State is likewise justified in revoking probation and using imprisonment as an appropriate penalty for the offense. But if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically without considering whether adequate alternative methods of punishing the defendant are available. (Footnote omitted.)

In Wyoming, once the State has established the failure of a probationer to pay restitution as ordered by the court, the probationer must establish any defense to revocation based on his alleged inability to pay. *Badura v. State,* 832 P.2d 1390 (Wyo.1992).

■ Dickson testified he was financially unable to make the restitution payments. When he agreed to pay restitution, he was

married, living in a two-income household, and anticipated employment at a salary projected at $34,000 a year. Subsequently, he was divorced, and his income became the sole source of money to pay restitution. The job he had relied upon never materialized. Dickson presented copies of his federal income tax returns for 1988 and 1989 to show he was unable to make restitution payments. The 1988 return showed income of $25,080.30. In it, he described the October 1988 restitution payment as "Bus. Bad Debt, Samaco Energy," which he reflected as a negative amount on line twenty-two entitled "Other income." The form submitted showed an income tax of $159.23. The form for 1989 showed income of only $5,327.98. According to that return, he had overpaid taxes and was due a refund of $478.21. The only evidence presented with respect to his financial situation after 1989 was an Income Statement showing a monthly salary, excluding any bonuses, of $3,466 and monthly expenses, including the restitution, of $2,350. He filed the Income Statement with the court in December 1990, after he was first contacted pursuant to the bench warrant issued upon the petition to revoke his probation. There was no evidence with respect to his finances in the years 1991, 1992, 1993, and 1994. The trial court commented, "[b]ut it's clear to me that there is quite a bit of explaining that needs to be done with regard to what's happened since 1989."

 Dickson's position could be summarized as a decision not to pay any restitution if he couldn't pay the full amount. The trial court commented:

> For the year 1989 it shows that it was filed April 15, 1990. It also shows a refund in the amount of $478.21. I am going to assume that this refund was received some time during the year 1990 which means that while you were on probation as to count one, you had at least $475 in hand from the United States government, but note that you never even attempted to apply that to your restitution obligation. So we know as to at least that amount of money, there was a willful failure to comply with the terms of restitution agreement, * * *.

A trial court does not commit an abuse of discretion in revoking probation if, after reviewing the facts, it can reach a conscientious determination that a violation of the conditions of probation has occurred. *Gailey v. State,* 882 P.2d 888 (Wyo.1994); *Leyba v. State,* 882 P.2d 863 (Wyo.1994). The trial court, in this case, reviewed the facts and concluded Dickson had willfully refused to pay restitution, particularly in light of the fact that he had a tax refund, but did not apply it or any part of it toward restitution. The trial court also had before it evidence that Dickson failed to make sufficient *bona fide* efforts to seek employment in order to pay the restitution. There is no indication of any effort to borrow money to make any restitution payment. Dickson made no effort to seek a modification of the terms of the order or notify the court of the change in his finances. In view of the record, the trial court had sufficient evidence to reach a conscientious conclusion that Dickson willfully violated his obligation to pay restitution. The trial court properly revoked Dickson's probation, and it did not abuse its discretion nor violate his rights to due process of law.

 This brings us to Dickson's contention that the trial court abused its discretion when it did not treat his second probationary term as completed. He asserts he satisfied that probationary term as a matter of law because it commenced three years after his initial probation, and no revocation occurred until six years after the initial probation was instituted. He argues he satisfied that probationary term in the absence of any action to revoke by the State.

Dickson's contention is antithetical to our recent decision in *Jibben v. State,* and *State v. Schaub,* 901 P.2d 1099 (Wyo.1995), in which we held that one cannot benefit from his refusal to appear before the district court after being ordered so to do, and we should not encourage defendants in criminal cases to flee and remain fugitives while awaiting some benefit from the law. Dickson was aware of the proceedings instituted to revoke his probation. Yet, he chose to rely upon his claim of dialogue with officers of the sheriff's department in Texas, rather than consulting with the Wyoming court. Like the situation

in which one is incarcerated outside of the state, we hold that the probation was tolled from the time the Petition for Order to Show Cause Why Probation Should Not Be Revoked was filed. *Jibben.* The result is that Dickson never started the second period of probation and, therefore, he could not have finished it.

We turn then to the first two contentions articulated by Dickson in his brief, whether the district court exceeded its authority in imposing a probationary term in excess of five years and in imposing consecutive sentences of probation. Were the circumstances otherwise, we might find a good deal of difficulty in sustaining the district court. WYO.STAT. § 7–13–301 does not readily adapt to its application in a multi-count case. The legislative intent seems clear to the effect it can only be used once. The intent of the court to apply the statute seriatim to the four counts of this information is apparent. While Dickson is not in a good situation to complain about the invocation of the provision in this way because he agreed to it and because, had the arrangement worked out, he would have ultimately received substantial benefits, other cases might assume a different posture. We strongly recommend to our trial courts and to the prosecutors that WYO. STAT. § 7–13–301 not be invoked in any instance in which more than one charge is being resolved.

■ We are satisfied the circumstances in this case are adequately resolved by our decision in *Kahlsdorf,* 823 P.2d 1184, where we not only ruled that the imposition of restitution was appropriate, but we dealt with a probationary term longer than five years. We did acknowledge the five-year limitation in WYO.STAT. § 7–13–301, but we ruled that, since the revocation proceeding had been initiated within the five-year term, the case was properly before the court to be disposed of as though it were the first sentencing proceeding. In Dickson's instance, the probation revocation proceeding was initiated within the first three-year term of probation. Although not disposed of within that time, the proceedings were tolled and, when Dickson appeared before the court for revocation, the court properly could sentence

him on the initial charge and impose successive periods of probation on the other three counts. The record discloses this is what occurred, and there is no error so far as Dickson is concerned.

■ Finally, we explain our decision to reverse and remand the Order Revoking Probation. There never was any judgment of conviction as to any of the four counts. It is difficult to tell what distracted the court and counsel from this normal process, but the closest the court came was when the judge reflected in dialogue with counsel:

> **THE COURT:** So I have to decide what to do with that count [Count I]? I can extend that probation period or I can revoke it and impose—enter a guilty plea, put the defendant on probation or I can revoke it and enter a guilty plea and incarceration. And whatever I do, only affects that one count, that's the initial count. Is that what the state's position is?

The Order Revoking Probation stated only:

> **THE ABOVE-ENTITLED MATTER** having come before the Court on the 25th of July, 1994, upon a Petition for Revocation, filed by the Department of Probation and Parole; AL DICKSON appearing in person with his attorney of record, Daniel Blythe; AL DICKSON having admitted the allegation of not paying restitution as stated in condition five (5) of his Judgment and Order of the Court dated March 22, 1988; the Court being fully advised on all matters pertinent herein;
>
> **IT IS THEREFORE ORDERED** that the defendant's probation as to Count I is revoked and that he be imprisoned and confined in the Wyoming Department of Corrections located at or near the city of Rawlins, Wyoming for a period of not less than two and one-half (2½) years nor more than three (3) years; * * *

WYO.STAT. § 7–13–301(c) provides:

> If the defendant violates a term or condition of probation at any time before final discharge, the court may:
>
> (i) **Enter an adjudication of guilt and conviction and proceed to impose sentence upon the defendant** if he previously pled guilty to or was found guilty

of the original charge for which probation was granted under this section; or

(ii) Order that the trial of the original charge proceed if the defendant has not previously pled or been found guilty. (Emphasis added.)

Wyo.R.Crim.P. 32(b) provides, in pertinent part:

(1) Except for forfeit offenses for which citations have issued (Rule 3.1), other misdemeanors where the penalty imposed does not exceed a fine of $200.00, and pleas entered under Rule 43(c)(2), **judgment of conviction upon a plea of guilty or nolo contendere shall include:**

(A) The plea, including the name and statute number of each offense to which the defendant pleaded and whether such offense was a felony or a misdemeanor;

(B) Findings that:

(i) The defendant was competent to enter a plea;

(ii) The defendant was represented by competent counsel with whom the defendant was satisfied including the name of the attorney (or that the defendant knowingly waived such right);

(iii) The defendant was advised as required by Rule 11 and understood those advisements; and

(iv) The plea was voluntary, and not the result of force or threats or of promises apart from a plea agreement;

(C) A statement as to whether the plea was the product of a plea agreement and, if so, that the plea agreement was fully disclosed and accepted by the court as required by Rule 11(d);

(D) **An adjudication as to each offense;** and

(E) Any other advisements required by law or that the court deems appropriate. (Emphasis added.)

We hold that an adjudication of guilt and conviction under the statute and an adjudication as to each offense is essential to the power of the court to impose sentence. We reverse and remand this case for the district court to comply with the statute and the rule.

The Order Revoking Probation is reversed and remanded for further proceeding in accordance with this opinion.