180 N.J. Super. 190 (1981)
434 A.2d 628
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
RONALD COLLINS, DEFENDANT-RESPONDENT. STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ALFRED C. MELECCI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1980.
January 13, 1981.
Decided August 3, 1981.
*192 Before Judges BOTTER, KING and McELROY.
Thomas E. Bracken, Assistant Prosecutor, argued the cause for appellant (Brian M. Laddey, Sussex County Prosecutor, attorney; Thomas E. Bracken on the brief).
Francis M. Devito argued the cause for respondent Collins (Alongi & Devito, attorneys; Paul Alongi on the brief).
Frank A. Dolan argued the cause for respondent Melecci (Trapasso, Dolan & Hollander, attorneys; Frank A. Dolan on the brief).
John J. Degnan, former Attorney General of New Jersey, filed a brief as amicus curiae (Daniel Louis Grossman, Deputy Attorney General, of counsel and on the brief; John DeCicco, *193 Assistant Attorney General, and Robert E. Rochford, Deputy Attorney General, of counsel).[*]
The opinion of the court was delivered by BOTTER, P.J.A.D.
These consolidated appeals concern defendants' eligibility for pretrial diversion from criminal prosecution. The issues arise from apparent conflicts among legislative provisions, N.J.S.A. 2C:43-12 et seq. (Code diversion) and N.J.S.A. 24:21-27 (Title 24 or Section 27 diversion), and the Supreme Court's rules and guidelines (Rule 3:28 diversion). The general issue in the Collins appeal is whether a person charged with a drug offense can be granted diversion under the Code of Criminal Justice (the Code) or R. 3:28 when N.J.S.A. 24:21-27 makes him ineligible for diversion because of his prior conviction on drug charges. The general issue in the Melecci appeal is whether a person who has previously been diverted may be diverted again despite the prohibition against diverting an offender more than once under Section 27 and N.J.S.A. 2C:43-12(g).
Collins was indicted in February 1979[1] for possession of cocaine contrary to N.J.S.A. 24:21-19. He applied for pretrial intervention but the prosecutor would not consent in view of his prior conviction for a drug offense. In February 1974 defendant had entered a guilty plea to possession of controlled dangerous substances (CDS). The record suggests that he had been *194 charged with possession of amphetamines and LSD with intent to distribute, but the plea was to simple possession. He was placed on probation for three years and, we are told, was discharged within two years because of his "cooperative attitude." After being indicted in 1979 defendant moved to compel his admission to the Sussex County Pretrial Intervention (PTI) Program. Finding "a suggestion of abuse of discretion here," the trial judge ordered his admission to PTI. We granted the prosecutor leave to appeal that order.
Melecci was indicted for distribution of cocaine in May 1979 contrary to N.J.S.A. 24:21-19(a)(1). His application for PTI was rejected by the program director because of his prior diversion in 1978 under N.J.S.A. 24:21-27. Melecci had been arrested on July 31, 1978 on a charge of possession of marijuana contrary to N.J.S.A. 24:21-20(a)(4). He was placed on supervisory treatment under Section 27 for a period of six months, and the complaint was later dismissed in July 1979 pursuant to N.J.S.A. 24:21-27. In 1980 defendant moved for admission to PTI on the new indictment. The issue presented was not whether Melecci deserved admission to PTI but merely whether he had "standing" to be considered or was absolutely disqualified by the fact that he was previously diverted under Section 27. The trial judge ruled that Melecci was not ineligible for admission to PTI and ordered the PTI director to process Melecci's application on the merits. We granted the State's motion for leave to appeal that order.
Pretrial intervention was introduced in New Jersey on October 7, 1970 by the Supreme Court's adoption of Rule 3:28. Almost simultaneously the Legislature provided a system of diversion for certain drug offenders by Section 27 of the New Jersey Controlled Dangerous Substance Act, N.J.S.A. 24:21-1 et seq., L. 1970, c. 226. It was not until the Code of Criminal Justice was adopted in 1978, effective September 1, 1979, that the Legislature provided a system of pretrial intervention generally for all persons accused of crime. The nature and history of pretrial intervention in New Jersey and elsewhere is traced *195 comprehensively in State v. Leonardis, 71 N.J. 85, 92-107 (1976) (Leonardis I).
Diversion by suspension of proceedings under N.J.S.A. 24:21-27 was limited to persons charged with or convicted of section 20 (N.J.S.A. 24:21-20) offenses only, namely, unlawful possession of a CDS or the disorderly persons offense of being under the influence of a CDS. State v. Alston, 71 N.J. 1, 6 (1976). These offenses are contrasted with Section 19 offenses which include possession with intent to distribute and distribution of a CDS. More relevant to our inquiry, N.J.S.A. 24:21-27(a) provides that diversion is limited to persons not previously convicted of a drug offense under any state or federal law. Moreover, Section 27(b) provides: "Termination of supervisory treatment and dismissal under this section may occur only once with respect to any person."
N.J.S.A. 24:21-27(c) provides few standards to control a judge's discretion in granting diversion. These include danger to the community and benefit to a defendant by correcting drug dependence. Supervisory treatment could be imposed for a period not exceeding three years, subject to a lesser maximum term of confinement authorized by law in the case of an offender referred to a residential treatment facility. N.J.S.A. 24:21-27(b). However, the benefits of Section 27 were available to all Section 20 offenders, not merely those addicted to or dependent upon drugs. State v. Alston, supra, 71 N.J. at 5-6. In Alston the court held that although the main thrust of supervisory treatment under Section 27 was the rehabilitation of drug users, the Legislature also intended it to be available to prospective users, novitiates and experimenters. Id. Another purpose was "to avoid placing the stigma of a criminal conviction on a first offender" who might be turned away from drug involvement. Id.
R. 3:28 provides a broader program of pretrial intervention applicable to "[a]ny defendant accused of crime" who demonstrates amenability to rehabilitation. Guideline 2 of the "Guidelines *196 for Operation of Pretrial Intervention of New Jersey," adopted by the Supreme Court, September 8, 1976 and continued under superseding guidelines adopted in January 1979; Pressler, Current N.J. Court Rules (1981 ed.) at 472 et seq. See Leonardis I, supra, 71 N.J. at 121-122. Guideline 3(e) provides that PTI may be available to a repeat offender. It states:

Prior Record of Convictions: The pretrial intervention program is not limited to `first offenders.' Defendants, however, whose criminal history includes a conviction or convictions of a serious nature should ordinarily be excluded. Defendants charged with more than one offense may be enrolled.
Similarly, Guideline 3(g) would permit diversion of someone who has been diverted previously under R. 3:28 or Section 27, although a defendant "should not ordinarily be re-enrolled."
Thus, until the Code of Criminal Justice was enacted there were two systems for diversion operating in this state. The legislative plan was very limited in scope, designed mainly for drug-dependent or drug-prone persons. Section 27 diversion was limited to persons charged with possession of drugs for personal use only, as distinguished from distribution of drugs. Provision was made for supervision for up to three years, as well as referrals to residential treatment facilities. Diversion was available before or after conviction, but could occur only once and was limited to persons not previously convicted of a drug offense. These provisions earned Section 27 diversion the description as a "drug rehabilitation program," Leonardis I, supra, 71 N.J. at 95, n. 5, although it was not strictly limited to drug-dependent offenders.
While PTI under R. 3:28 was initiated on a limited, experimental basis, State v. Senno, 79 N.J. 216, 229-231 (1979), from the outset it carried the potential for conflict between the Legislature and the judiciary. Despite the limitations in N.J.S.A. 24:21-27, R. 3:28(a) expressly contemplated PTI in cases of "sale or dispensing of narcotic drugs by persons not drug-dependent," by requiring the assignment judge in any vicinage to pass on those applications (as well as in cases of other serious crimes, such as murder, kidnapping and rape). Clearly, then, *197 the court signalled its view that a legislative program and a judicial program could coexist. Soon, however, the territorial right of the executive branch to determine exclusively through the prosecutor which offenders were to be diverted and which to be prosecuted was asserted in State v. Leonardis, 73 N.J. 360 (1977) (Leonardis II). This gave the court the opportunity to describe the roles allocated to each branch of government. The prosecutors challenged the court's authority to order PTI in the face of a prosecutor's refusal to consent. The court held that PTI had procedural as well as substantive effects over which the three branches of government shared authority. Aspects dealing purely with court procedure would be within the exclusive rule-making power of the Supreme Court. The court also saw judicial control as a necessary element in the court's traditional role of insuring the impartiality of public officials in deciding what criminal proceedings should be discontinued. As for legislative input into PTI, Justice Pashman, writing for the court, said that the Legislature is not foreclosed from enacting measures "affecting the substantive aspects of PTI. It is not our desire to inhibit legislative action in this sphere; on the contrary, we welcome it." Id. at 374-375. Although the Legislature has the primary responsibility for defining criminal conduct and providing remedies, prosecutors must have some discretion in determining what offenders should be prosecuted and what prosecutions should be discontinued, and the courts have traditionally shared responsibility for overseeing the decision to dismiss an indictment. See R. 3:25-1.
With this backdrop the Legislature incorporated a statewide PTI program into the Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq., L. 1978, c. 95; N.J.S.A. 2C:43-12 to -22. The Code provisions largely mirror the guidelines and procedures of R. 3:28, see State v. Dalglish, 86 N.J. 503 (1981), with some differences. Pertinent to this case is the provision that diversion under the Code or Section 27 "may occur only once with respect to any defendant...." N.J.S.A. 2C:43-12(g). This conflicts with Guideline 3(g) under R. 3:28 which merely discourages a *198 second diversion of the same offender. With respect to multiple offenders, the Code is consistent with Guideline 3(e) in providing that "supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal offense...." N.J.S.A. 2C:43-12(a). However, Section 27 limits diversion to first offenders, and N.J.S.A. 2C:43-22 provides:
Nothing contained in this act is intended to supersede, repeal or modify the authority granted and procedure prescribed under section 27 of P.L. 1970, c. 226 (C. 24:21-27).
Does this mean that in drug cases diversion is limited to first-time drug offenders, as provided in Section 27? We think not. To explain this conclusion, which is central to the Collins appeal, and to determine Melecci's eligibility for a second diversion, we must consider the specific language in the Code as well as the relationship between Code diversion, Section 27 diversion, and the R. 3:28 diversion program if it still exists.
We will deal first with diversion under Title 24. Section 27 provisions constitute a separate, narrow system, whose criteria apply only to Section 27 diversions. It has been viewed this way by the Supreme Court and, to some extent, by the Legislature. Despite Section 27's limitation of diversion to simple drug possession offenses, offenders charged with drug offenses not under N.J.S.A. 24:21-20 have been considered eligible for PTI pursuant to R. 3:28. State v. Bender, 80 N.J. 84, 91 (1979) (possession of CDS not in original containers, in violation of N.J.S.A. 24:21-18, and failure to maintain records, in violation of N.J.S.A. 24:21-21(a)(4)); Leonardis I, supra, 71 N.J. 85, 90 (1976) (possession of CDS, in violation of N.J.S.A. 24:21-19(a)(1)). Guideline 3(h) sanctions this approach. It provides:
(h) Eligibility Under N.J.S.A. 24:21-27: The statute sets forth the criteria for eligibility (§ 27(a)) and guidelines for exclusion (§ 27(c)). Defendants eligible for pretrial intervention or conditional discharge pursuant to § 27 of the Controlled Dangerous Substance Act may be placed under the supervision of a pretrial intervention program.
We note that Section 27 does not use the term "pretrial intervention." It speaks of suspension of criminal proceedings and supervisory treatment. The Section 27 process includes *199 withholding entry of a judgment of conviction in cases where there has been a finding of guilt or where a guilty plea has been entered, and placing defendant "on supervisory treatment." This process is sometimes referred to as "conditional discharge." Thus, the language used in Guideline 3(h) meant that divertees "pursuant to § 27" could be supervised in PTI programs operating under R. 3:28, using Section 27 eligibility criteria. In Leonardis II, supra, Justice Pashman, in speaking of the "cooperative action" required of the three branches of government, said:
In fact, the program is specifically tailored to respect the Legislature's judgment... By instructing the program director and the prosecutor to consider the nature of the offense, the guidelines follow the Legislature's lead in determining, generally, whether a class of offenders should be diverted into PTI. In addition, Guideline 3(h) specifically requires the court, the program director and the prosecutor to consider the eligibility criteria and guidelines for exclusion enacted by the Legislature where the defendant is being considered for pretrial intervention pursuant to the Controlled Dangerous Substances Act, N.J.S.A. 24:21-27. [73 N.J. at 372]
Clearly, however, offenders not eligible for diversion under Section 27 were diverted under R. 3:28. The Leonardis cases were examples of this dichotomy. In footnote 5, Leonardis I, 71 N.J. at 95, the court said: "We note the strong similarities which exist between the PTI programs established under R. 3:28, and the drug rehabilitation program prescribed by N.J.S.A. 24:21-27." Despite the fact that all three defendants whose appeals were joined in Leonardis I were disqualified from Section 27 diversion because they were charged with violating N.J.S.A. 24:21-19(a)(1), the court ordered that they be considered for PTI under R. 3:28. The court did not state that R. 3:28 prevailed over Section 27; it simply treated R. 3:28 diversion as a separate system, indicating that divertees pursuant to Section 27 must confront Section 27 criteria. The court emphasized that under R. 3:28 defendants "accused of any crime shall be eligible" for PTI consideration. 71 N.J. at 121. The disqualifying provision in N.J.S.A. 24:21-27 was ignored in that determination.
*200 The Legislature has acknowledged Section 27's separate diversion system. N.J.S.A. 2C:43-12(g) speaks of diversion under the Code or under Section 27 as if they are separate, viable systems. N.J.S.A. 2C:43-12(g) provides:
Limitations. Supervisory treatment, whether under this section or under section 27 ... may occur only once with respect to any defendant....
Thus, we conclude, a defendant may be considered for diversion under the Code or under Section 27, and the criteria to be used depend on the PTI authority which is invoked.
The next question is whether the Code provisions for PTI were meant to supersede R. 3:28 completely. The Legislature's response to the Supreme Court's invitation in Leonardis II, supra, 73 N.J. at 375, for "action in this sphere" in some respects suggests that it intended to occupy the field. The Code contains a public policy statement concerning the purposes of PTI. It contains criteria for eligibility and admissibility; it requires judges to perform certain functions (N.J.S.A. 2C:43-12(c)); it provides for programs of "supervisory treatment" with approval of the Supreme Court and the consent of assignment judges and prosecutors. N.J.S.A. 2C:43-12(i).[2] Nevertheless, by N.J.S.A. 2C:43-14 the Legislature authorized the Supreme Court to adopt "rules dealing with Supervisory Treatment" in accordance with procedures set forth in N.J.S.A., 2C:43-15 to 20. These latter provisions, however, would reserve veto power to the Legislature and the Governor, acting jointly; and N.J.S.A. 2C:43-18 provides that all such rules "shall be subject to change or cancellation at any time by statute...."
*201 The Senate Judiciary Committee Statement annexed to Senate Bill 738, which became L. 1978, c. 95, said in part:
I. Pretrial intervention programs are currently operating in New Jersey pursuant to court rule. The Code would place authorization for pretrial intervention programs into our statutes, thus allowing for legislative input into the operation of such programs. [Emphasis supplied]
More than merely allowing for "input" into the operation of the court's PTI program, the Legislature reserved a considerable role for itself. It failed to distinguish, however, between areas of procedure and areas of substance, where such distinctions can be made, in order to validly separate the Supreme Court's functions from those of the other branches. Thus, the reservations by N.J.S.A. 2C:43-18 of the right to amend by statute any PTI rule adopted by the Supreme Court must fail, at least with respect to rules governing court procedure. In other respects the Legislature's conception of a proper division of authority is not clear. See, for example, N.J.S.A. 2C:43-12(i), which attempts to give assignment judges as well as prosecutors the right to withhold consent to programs of supervisory treatment approved by the Supreme Court. Clearly, the Supreme Court alone has the authority to prescribe duties for assignment judges.
Some aspects of R. 3:28 must survive the Legislature's action. We need not delimit all these areas, since the Supreme Court's response to the adoption of Code provisions for PTI has been constructive. That response may be construed in a fashion that avoids the conflict in eligibility criteria posed in the Melecci appeal.
The Supreme Court amended R. 3:28(a), effective on the same date the Code became operative, to provide:
Each Assignment Judge shall designate a judge or judges to act on all matters pertaining to pretrial intervention programs in the vicinage in accordance with N.J.S.A. 2C:43-12 and -13. ... [Emphasis supplied]
R. 3:28(b) was also amended to omit trial court administrators and chief probation officers as participants in the recommending process, leaving only an approved program director with authority to recommend admission to PTI. This accords with the *202 scheme provided in N.J.S.A. 2C:43-12(i). Subsections (b) and (d) of R. 3:28 were also amended to change the maximum duration of PTI participation to two successive six-month periods to coincide with the maximum one-year period provided by the Code. N.J.S.A. 2C:43-13(c). The explanatory note to the Supreme Court's promulgation of these and other rule changes on August 28, 1979, effective September 1, 1979, states in part that "the majority [of these] rule amendments ... are intended to assist with implementation of the Code."
The changes in R. 3:28(a) were proposed in the Report of the Supreme Court's Committee on Criminal Practice, 103 N.J.L.J. 418 (May 3, 1979). The Committee's comments on the change in R. 3:28 include the following:
The proposed Rule amendment would add the language "in accordance with N.J.S.A. 2C:43-12 and -13" to indicate that the pretrial intervention program conformed to the purposes and procedures set forth in the Code. [103 N.J.L.J. 418]
The Report added:
In its consideration of proposed amendments to R. 3:28, the Subcommittee took note of the problems connected with enactment of rule proposals, N.J.S.A. 2C:43-14 et seq., and, therefore, did not attempt to comprehensively revise the Rule. [Id.]
Edwin H. Stern, now Assistant Administrative Director of the Courts, added a separate statement on the "Penal Code Rule Proposals," in which he said:
2. Rule 3:28 refers to programs involving `penal' as well as `criminal offenses.' The Penal Code, 2C:43-12e, refers to `criminal' matters. Assuming that it can be done, I read nothing in the Code as intended to limit non-indictable programs where they are approved by the Court. See also State v. Leonardis, 73 N.J. 360 (1977); State v. Senno, 79 N.J. 216 (1979).[4] Moreover, 2C:43-12e requires program approval by the Supreme Court. Therefore, reference to programs as `approved' by the Supreme Court in both R. 3:4-2 and R. 3:28 is appropriate, despite the fact that there must now be indictable programs in all counties. N.J.S. 2C:43-12 et seq. (With respect to R. 3:28 amendments after September 1, 1979, see 2C:43-14 [to] 20). [Id., footnote omitted]
These comments as a whole show a design to amend R. 3:28 so as to utilize the legislative scheme for PTI where applicable. Consistent with the forgoing, on this appeal the Attorney General has taken the position that, since September 1, 1979 "The *203 court rule as now in effect requires PTI procedures and diversion to occur through the statutory provisions. R. 3:28(a)."
By order of January 2, 1981 the Chief Justice suspended the time periods contained in Guideline 6, R. 3:28, to further the court's speedy trial experimental study. See Order Re: Criminal Case Disposition, 107 N.J.L.J. 48 (January 15, 1981). Defendants contend that this order signifies the Supreme Court's view that R. 3:28 and its related guidelines are still viable. Guideline 6 provides that application for PTI admission must be made "not later than 25 days after original plea to the indictment." This conflicts with N.J.S.A. 2C:43-12(e), which provides that diversion may be made "at any time prior to trial." The prosecutor has responded by saying that this amendment pertains to a matter of procedure only, in which case the court rule would prevail over the statute unless the amendment was adopted.
It is difficult to describe the exact perimeters of assimilation of the Legislature's PTI scheme into the Supreme Court's preexisting program. (We have seen no indication that any new "supervisory treatment" program has been approved by the Supreme Court with the "consent of" assignment judges and prosecutors as provided in N.J.S.A. 2C:43-12(i).) The opinion in State v. Dalglish, supra, shows considerable respect for the Code's PTI provisions. It speaks of the "statewide program of pretrial intervention" adopted by the Code. (86 N.J. at 506, 510-11, 513.) Although the opinion iterates the view that the courts "should exercise independent judgment in fulfilling their responsibility to maintain the integrity and proper functioning of PTI as a whole," (at 510), this comment refers to the standard by which prosecutorial decisions are to be judged on review. Nowhere does the opinion suggest that Code PTI provisions are inoperative and that R. 3:28 and its guidelines contain the prevailing determinants of eligibility.
Our conclusion is that the Supreme Court intended to assimilate into one program Code provisions and R. 3:28 provisions *204 with its implementing guidelines. The Code and R. 3:28 contain provisions that overlap the boundaries of all branches of government. Both the Code and R. 3:28 deal with matters that may be described as procedural as well as substantive. The Supreme Court has said that PTI is "a remedial aspect of a criminal proceeding." Leonardis II, supra, 73 N.J. at 370, over which courts as well as the Legislature have authority. Id. at 369-370. The Legislature has recognized the Supreme Court's considerable responsibility in the field. The areas of agreement between the Legislature and the Supreme Court dwarf the differences between them. The only sharp difference in this case concerns readmission to PTI of someone who was previously diverted.
Turning to defendant Collins we see that the prosecutor's refusal to consent to his diversion was based on his prior conviction for a drug offense. The prosecutor relied on the disqualifying provision in Section 27. Obviously, however, defendant was not seeking diversion pursuant to Section 27. He was seeking diversion under the Code or R. 3:28, neither of which limit PTI to first offenders, although they contain a strong bias against anyone who has a prior conviction. N.J.S.A. 2C:43-12(a); Guideline 3(e), R. 3:28. The prosecutor and Attorney General are correct in saying that a refusal to consent on this ground is entitled to great weight and in most cases will be unassailable. Thus, the trial judge erred in ordering defendant into PTI without giving sufficient consideration to the prior conviction and the prosecutor's opposition. The prosecutor should have made a better presentation of the circumstances of that offense without relying entirely on the claim of absolute disqualification under Section 27. In fact, the entire record before us is rather incomplete. But a trial judge cannot order admission over objection unless a consideration of all the circumstances demonstrates a "patent and gross abuse of discretion." State v. Dalglish, supra 86 N.J. at 506; Leonardis II, supra, 73 N.J. at 382. Measured by this standard the findings in the Collins case were deficient.
*205 In the Melecci appeal the question is whether Melecci can be considered for diversion a second time. He was previously diverted under Section 27. He cannot again be diverted under that section or under the Code. N.J.S.A. 2C:43-12(g).[3] If R. 3:28 governs, Melecci would be eligible for diversion under Guideline 3(g). That guideline merely inveighs against a second diversion, saying that persons previously enrolled in PTI pursuant to R. 3:28 or Section 27 "should not ordinarily be re-enrolled."
R. 3:28 does not contain criteria for eligibility. The criteria are contained in guidelines promulgated by the Supreme Court. However, as noted above, for the purpose of implementing the new Code of Criminal Justice the Supreme Court amended R. 3:28(a) to provide that judges shall act upon pretrial intervention matters "in accordance with N.J.S.A. 2C:43-12 and -13...." Previously the Court in Leonardis II, supra, 73 N.J. at 374, had invited legislative enactment of "measures affecting the substantive aspects of PTI." Eligibility criteria must be deemed to be close to "substantive aspects" if not actual substantive aspects. See comments in Leonardis II, supra, 73 N.J. at 372, which are quoted above, as to following the legislature's "lead in determining, generally, whether a class of offenders should be diverted into PTI." We conclude, therefore, that the Legislature's prohibition against rediverting an offender should have been applied in this case. We need not decide whether R. 3:28 eligibility criteria must yield to the provisions in the Code. We are satisfied that the Supreme Court's amendment of R. 3:28 incorporated Code standards of eligibility by reference, although court rules would prevail as to purely procedural matters. Thus, the trial judge erred in ordering the Sussex County program director to consider Melecci's application for PTI, contrary to N.J.S.A. 2C:43-12(g).
*206 The order admitting defendant Collins to PTI is reversed and vacated and the matter is remanded to the trial court for reconsideration of Collins' motion to compel his admission to PTI. Jurisdiction is not retained.
The order requiring the Director of PTI for Sussex County to process defendant Melecci's application is reversed, and the cause is remanded to the court below for trial.
NOTES
[*] After the first oral argument we asked the Attorney General to file a brief as amicus curiae. The parties were allowed to file supplemental briefs thereafter, and we rescheduled oral argument of the appeal at the request of the Sussex County Prosecutor. Stanley C. Van Ness, Public Defender, was also asked if he wished to file a brief as amicus curiae. After reviewing the Attorney General's brief he advised the court that he felt it was not necessary for him to do so.
[1] The record suggests that Melecci was also indicted before the Code became effective on September 1, 1979. However, defendants' applications for pretrial intervention were processed in 1980 at a time when the Code provisions for diversion were in effect. Cf. State v. Molnar, 81 N.J. 475, 488-489 (1980), as to N.J.S.A. 2C:1-1(c)(1), which provides that in cases pending on the effective date of the Code the "procedural provisions of the Code shall govern" generally. On these appeals we assume that the Code's PTI provisions may apply.
[2] We read the term "Supervisory Treatment" in N.J.S.A. 2C:43-14 as synonymous with the PTI program in general. See 2C:43-12(a) in L. 1978, c. 95, p. 635, which speaks of "The Supervisory Treatment Act" as effectuating "a statewide program of Pretrial Intervention." The term "supervisory treatment," therefore, is used in the Code in referring to Code diversion in general as well as particular programs for managing enrollees. As used in N.J.S.A. 2C:43-12(i) the term refers to the specific programs of supervision to be established in each county.
[3] However, read literally, N.J.S.A. 2C:43-12(g) would not preclude eligibility of an offender who was previously diverted under R. 3:28.