**Thomas HEGGEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 89–84.

Supreme Court of Wyoming.

Oct. 5, 1990.

Frank R. Chapman, Casper, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Paul S. Rehurek, Sr. Asst. Attys. Gen., Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Thomas Heggen, convicted of one count of submitting a false claim with intent to defraud, raises issues identical to those raised in *Hudson v. State*, No. 89–83 [800 P.2d 471] (Wyo. Oct. 5, 1990) and *Billis v. State*, No. 88–250 [800 P.2d 401] (Wyo. Oct. 5, 1990), concerning the constitutionality of W.S. 7–13–301 (June 1987 Repl.) ("new 301").

We affirm.

From March through May, 1987, Mr. Heggen, while employed, filed a series of false unemployment claims with the Employment Security Commission which netted him $1,584 in benefits he was not entitled to receive. Under a plea agreement, in return for Mr. Heggen's plea of guilty to one count of submitting a false claim with intent to defraud in violation of W.S. 6–5–303(b)(June 1983 Repl.), the state agreed not to pursue seven other counts of the same crime, and a charge of obtaining property by false pretenses in violation of W.S. 6–3–407(a)(i)(Cum.Supp.1984), and to recommend a sentence of a two-year probation plus restitution. Being apprised of the plea bargain, the district court judge accepted the guilty plea and ordered a presentence investigation report. Before the

sentencing proceeding, Mr. Heggen filed a motion for "new 301" treatment. At the sentencing proceeding, Mr. Heggen requested that the court make a record concerning whether the court would have handled Mr. Heggen under "new 301" but for the state's refusal to consent to that treatment. The court declined to say what it would do were the statute different and found that "new 301" requires the consent of both parties. The court sentenced Mr. Heggen to two years supervised probation. This appeal followed.

■■■ Mr. Heggen raises issues identical to those raised in *Billis* and *Hudson*, namely:

1. Whether W.S. 7–13–301 (June 1987 Repl.), requiring the state's consent to the court's deferring further proceedings and placing a defendant on probation without entry of a judgment of conviction, infringes on the judicial department's sentencing power in violation of the principle of separation of powers explicitly stated in Wyo. Const. art. 2, § 1.
2. Whether 1987 Wyo.Sess.Laws, ch. 157, § 3, enacting W.S. 7–13–301 (June 1987 Repl.), was enacted in violation of Wyo. Const. art. 3, § 20, which proscribes altering or amending a bill during its passage through the legislature so as to change the bill's original purpose.
3. Whether 1987 Wyo.Sess.Laws, ch. 157, § 3, enacting W.S. 7–13–301 (June 1987 Repl.), was enacted in violation of Wyo. Const. art. 3, § 24, which mandates the passage of a bill containing only one subject which must be clearly expressed in the bill's title.
4. Whether the prosecutor's refusal to consent to sentencing under § 7–13–301 was arbitrary and an abuse of discretion and therefore violated Wyo. Const. art. 1, §§ 2 and 7.

Although the state asserts that Mr. Heggen has not preserved these issues since he failed properly to raise them below, we have chosen to consider them as explained in *Hudson*.

Our decisions in *Billis* and *Hudson*, in particular, and in *Mollman v. State*, No. 89–21, 800 P.2d 466 (Wyo. Oct. 5, 1990), and *Lowry v. State*, No. 88–312, 800 P.2d 401 (Wyo. Oct. 5, 1990), are dispositive here. *See also* companion cases, *Vigil v. State*, No. 88–310 (Wyo. Oct. 5, 1990); *McIver v. State*, No. 88–311 (Wyo. Oct. 5, 1990); *Moon v. State*, No. 88–304 (Wyo. Oct. 5, 1990); and *Magarahan v. State*, No. 89–4 (Wyo. Oct. 5, 1990) [800 P.2d 401]. Applying those decisions in this case, we hold that "new 301" is constitutional in terms of the issues raised here and that the prosecutor's refusal to consent to "new 301" treatment in Mr. Heggen's case was neither arbitrary nor an abuse of discretion in violation of Wyo. Const. art. 1, §§ 2 and 7. Accordingly, we affirm.

URBIGKIT, C.J., filed a dissenting opinion in which MACY, J., joins.

MACY, J., filed a dissenting opinion in which URBIGKIT, C.J., joins.

URBIGKIT, Chief Justice, dissenting, with whom MACY, Justice, joins.

Thomas Heggen, age thirty-one and married with two children, is "a stable, law-abiding, and productive member of the [Casper] community." In 1987, he and his family were in the process of completing an adoption and were then the victims of the Casper, Wyoming energy depression and consequent unemployment. Unemployed for one and one-half years, he took whatever part-time work he could find until he could obtain full time employment.

His improvidence in obtaining unreported part-time employment while receiving continued unemployment compensation benefits resulted in the filing against him of a *nine* count felony charge.[1] The amount

---

1. The statutory penalty for unemployment compensation benefit receipt fraud is found in W.S. 27–3–704 and is a misdemeanor. To prosecute Heggen, the prosecuting attorney went to the general false claims statute, W.S. 6–5–303(b), to authenticate a nine felony charge. In result, fraud by the employer is only a modest misdemeanor, but as here the employee is subjected to a multiple charge felony. There is a serious question of the entire validity of the charge under any felony statute, but that is not the issue presented here since the question of the

involved in the nine count felony charge was $1,584 for which full restitution was made before any final plea was entered. Faced with the totality of the charge with sentences which could, under W.S. 6–5–303(b), total eighteen years and a fine of $18,000, plea negotiation was pursued.[2] Faced with the severity of this multiplied penalty aggregation, Heggen negotiated to plead out for an indicated term of probation on the basis of his record as a first offender with no significant prior offenses except one speeding charge. Justification existed here, if it ever exists in this society, to not incarcerate everyone who commits a criminal offense, washed or unwashed, favor or unfavored, since Heggen was a person who had obviously made a mistake.

Eight of the nine felony counts in accord with the plea bargain agreement were dismissed before preliminary hearing in county court and Heggen was then arraigned in the district court on the remaining felony charge. At that arraignment, counsel advised the trial court that in negotiated disposition, eight of the nine felony charges were dismissed with the agreement of a guilty plea to the ninth count and that he "should do no more than a probationary period for this for two years, should make restitution and no other charges would be filed against him." The plea was then made and authenticated:

THE COURT: Mr. Heggen, how do you plead to the charge?

THE DEFENDANT: Guilty.

THE COURT: If you maintain your plea of guilty you are admitting all of the essential facts of the charge, the State will not have to prove any case against you and only issue will be the sentence. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Have you been induced or threatened by anyone to enter this plea?

THE DEFENDANT: No, sir.

THE COURT: Is the plea made voluntarily and of your own volition?

THE DEFENDANT: Yes, sir.

THE COURT: Are you making your plea after consultation with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Do you fully understand the charge that has been filed against you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to plead not guilty?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you plead not guilty you would be entitled to a speedy trial by a judge or an impartial jury of 12 persons, which would have to return a unanimous verdict of guilty in order to convict you?

THE DEFENDANT: Yes.

THE COURT: Do you understand at such a trial you would have the right to confront and cross examine the witnesses against you, to have compulsory process for witnesses to testify in your behalf, to testify yourself, and to present other evidence?

THE DEFENDANT: Yes.

THE COURT: Do you understand at such a trial you would be presumed to be innocent and that the prosecution would have to establish your guilt by competent evidence beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would have the right to remain silent, and your silence could not be used against you, that is you could not be compelled to incriminate yourself?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you would have the right to assistance of counsel at such a trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you plead guilty you waive all of these

---

specific applied statute controlling over a general statute was neither raised nor briefed.

**2.** The prosecutorial perjury contestably involved in *Cooney v. Park County,* 792 P.2d 1287 (Wyo. 1990) involving conduct by the prosecutor is a maximum five year, $5,000 felony criminal offense for which, of course, no charge was ever filed.

rights, that is you no longer have these rights and there will not be a trial?

THE DEFENDANT: Yes.

THE COURT: Do you understand the agreement as to your plea and sentence in this case?

THE DEFENDANT: Yes.

THE COURT: Do you understand the agreement is that you would be placed on probation for a period of two years, under the supervision of the Wyoming Department of Probation and Parole, your probation being upon the conditions that you not violate any federal, state or local laws, that you obey the rules and regulations of the Probation Department, that you pay any restitution which might be owing less credit for what you have already paid, that you pay $50. to the Clerk of the Court's office for the State Victims Compensation Fund?

THE DEFENDANT: Yes.

THE COURT: Are you making this agreement voluntarily?

THE DEFENDANT: Yes.

THE COURT: The Court finds that the plea agreement was made voluntarily by the defendant with full understanding of its consequences. The Court defers acceptance of the agreement pending further information prior to sentencing. Do you understand that apart from this agreement that you could otherwise be sentenced to as much as two years in the State Penitentiary and a $2,000. fine on this charge?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you plead guilty I must ask you questions about the offense?

THE DEFENDANT: Yes.

[THE COURT:] Do you understand that if you answer these questions under oath, on the record and in presence of counsel, your answers may later be used [against] you in a prosecution for perjury or false statement?

THE DEFENDANT: Yes.

THE COURT: Do you understand that the elements of this offense are that, first, the offense occurred on or about the 29th of March, 1987, in Natrona County, Wyoming, second, that you did unlawfully and knowingly submit a false claim or voucher, and, third, that this was with the intent to defraud?

THE DEFENDANT: Yes.

THE COURT: On or about the 29th of March, 1987, in Natrona County, Wyoming, did you unlawfully and knowingly submit a false claim or voucher with the intent to defraud?

THE DEFENDANT: Yes.

THE COURT: Where did this occur?

THE DEFENDANT: At the Employment Security Office, Your Honor.

THE COURT: What was false about your claim?

THE DEFENDANT: I didn't claim all the wages that I earned.

THE COURT: And as a result did you receive unemployment compensation?

THE DEFENDANT: Right.

The trial court then concluded the arraignment proceedings by the acceptance of the plea:

The Court finds that the defendant is alert and not under any influence which would adversely affect his ability to understand these proceedings, that he is competent to enter a plea, and that the plea is knowingly and voluntarily made, without any improper inducement or conditions, free of coercion, and with an understanding of the charge and the consequences. The Court further finds the plea was made after consultation with competent counsel, and that there is a factual basis for the plea. Therefore, the Court accepts the plea of guilty.

Simplistically stated under any concept of any American jurisdiction precedent, *this was no pretrial diversion. This was a conviction with a guilty plea entered and accepted.*

The issue of the usage of W.S. 7–13–301 was presented by a written motion in behalf of Heggen. The prosecutor then initiated the sentencing hearing by a general recommendation:

[PROSECUTOR]: The State would request the defendant be placed on two years supervised probation with the

usual conditions, any counseling, I believe restitution has been paid.[3]

Responding to the recommendation of the prosecutor, which had not in any way approved or disapproved of the requested W.S. 7–13–301 vacation of conviction sentencing attribute, counsel for Heggen again raised the request for a W.S. 7–13–301 application and requested a sentence to follow the probation report recommendation of six months unsupervised probation.

On the record, the prosecutor never actually vetoed the requested W.S. 7–13–301 sentencing arrangement. Somehow by osmosis, the litigants apparently recognized that the prosecutorial veto was exercised without *either* express statement or pro forma justification. *See Billis v. State*, 800 P.2d 401 (Wyo.1990) (Nos. 88–250, 304, 310, 311, 312 and 89–4, 10/5/90), Urbigkit, Chief Justice, dissenting.[4] The sentence itself of two years supervised probation fits equally and appropriately within either W.S. 7–13–301 or 7–13–302, except that the opportunity for felony conviction extinguishment was obviously and intentionally not included. The trial court said:

> My position on that is that the statute does require the consent of both parties, and that I cannot sentence someone pursuant to that section without the consent of both sides, and also that courts are not supposed to make unnecessary rulings. So I don't think it would be proper to say what I would do if the statute were different.

Consequently, the sentencing was made under W.S. 7–13–302 (a sentence which would not result in post-probation felony conviction extinguishment).

The only result of all of this is that Heggen, by exercise of even an unstated veto in this case by the prosecutor, cannot hereafter vote, hold most public offices, own a firearm or otherwise pursue the normal activities accorded citizenship in a democratic society. Arbitrary and unprincipled control over the judicial functioning of sentences, here contributed by the prosecution, consequently forecloses application of Wyo. Const. art. 1, § 15, the requirement of a penal code framed on the humane principles of reformation and prevention.

I find no room in the justice delivery system for unthinking, unjustified or unprincipled trial advocate control over judicial discretion for sentencing. Not one case cited by the litigants or the majority justifies this incursion on judicial process. In the first place, the volume of cases cited in support, *see Billis*, 800 P.2d 401 (Nos. 88–250, 304, 310, 311, 312 and 89–4, 10/5/90), Urbigkit, Chief Justice, dissenting, relate to an incident in the course of criminal prosecution called diversion which, by no applicable definition, applies here. Secondly, even to diversion, unprincipled, arbitrary and unjustified discretion is categorically rejected on a due process, equal protection inhibition. *See Shade v. Com. of Pennsylvania, Dept. of Transp.*, 394 F.Supp. 1237, 1240 (M.D.Pa.1975); *People, By and Through Vanmeveren v. District Court In and For Larimer County*, 186 Colo. 335, 527 P.2d 50 (1974); *Cleveland v. State*, 417 So.2d 653, 654 (Fla.1982); *State*

---

3. The probation officer had evaluated and recommended:

> The Defendant's prior offense record, or lack thereof, and his employment history are fairly indicative that he is a stable, law-abiding, and productive member of the community. The fact the Defendant paid restitution in full, in less than one month and without being ordered to, demonstrate[s] a certain amount of remorse for his wrongdoing and a desire to correct it.
> These things taken into consideration, it is this Agent's opinion that the ultimate goal of probation has already been achieved; and no further benefit, to either the community or the individual, can be obtained by placing Mr.

> Heggen on supervised probation for any length of time.
>
> \*   \*   \*   \*   \*   \*
>
> It is respectfully recommended, therefore, that the Defendant, Mr. Thomas Heggen, be placed on unsupervised probation for a period of time not in excess of six months.

4. As one can best discern from this record, the prosecutorial veto, albeit unstated, was accomplished by nonconcurrence and without express statement in the record. This becomes the absolute antithesis of exercised rational discretion and is the epitome of arbitrary absurdity evidencing appearances of juvenile and unprincipled conduct.

v. *Cleveland,* 390 So.2d 364 (Fla.App.1980); *State v. Greenlee,* 228 Kan. 712, 620 P.2d 1132 (1980); *State v. Collins,* 180 N.J.Super. 190, 434 A.2d 628 (1981), *aff'd* 90 N.J. 449, 448 A.2d 977 (1982); *State v. Dalglish,* 86 N.J. 503, 432 A.2d 74 (1981); *State v. Leonardis,* 73 N.J. 360, 375 A.2d 607 (1977) (*Leonardis II*); *State v. Leonardis,* 71 N.J. 85, 363 A.2d 321 (1976), *reh'g* 73 N.J. 360, 375 A.2d 607 (1977) (*Leonardis I*); *City of Cleveland v. Mosquito,* 10 Ohio App.3d 239, 461 N.E.2d 924 (1983); *State v. Graves,* 58 Or.App. 286, 648 P.2d 866 (1982); *State ex rel. Harmon v. Blanding,* 292 Or. 752, 644 P.2d 1082 (1982); *State ex rel. Anderson v. Haas,* 43 Or.App. 169, 602 P.2d 346 (1979); *Com. v. Ebert,* 369 Pa.Super. 318, 535 A.2d 178 (1987); *Com. v. Lutz,* 508 Pa. 297, 495 A.2d 928 (1985); *Com. v. Kindness,* 247 Pa.Super. 99, 371 A.2d 1346, 1347 (1977); *Pace v. State,* 566 S.W.2d 861 (Tenn.1978); and Note, *Pretrial Diversion from the Criminal Process,* 83 Yale L.J. 827, 852–54 (1974). See also the cases which, although categorized as contra, are generally consistent since either dealing with post plea non-diversion status as a separation of powers issue or the due process, equal protection, constitutional constituents of exercised discretion, *State v. Prentiss,* 163 Ariz. 81, 786 P.2d 932 (1989); *State v. Jones,* 142 Ariz. 302, 304, 689 P.2d 561, 563 (1984); *People v. Superior Court of San Mateo County,* 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974); *People v. Navarro,* 7 Cal.3d 248, 102 Cal.Rptr. 137, 497 P.2d 481 (1972); *Esteybar v. Municipal Court for Long Beach Judicial Dist. of Los Angeles County,* 5 Cal.3d 119, 95 Cal.Rptr. 524, 485 P.2d 1140 (1971); *People v. Tenorio,* 3 Cal.3d 89, 89 Cal.Rptr. 249, 473 P.2d 993 (1970); *People v. Caldwell,* 118 Ill.App.3d 1027, 74 Ill.Dec. 464, 455 N.E.2d 893 (1983); *People v. Teschner,* 81 Ill.2d 187, 40 Ill.Dec. 818, 821, 407 N.E.2d 49, 52 (1980); *State v.*

*LeCompte,* 406 So.2d 1300 (La.1981); *State v. Olson,* 325 N.W.2d 13 (Minn.1982); *State ex rel. Light v. Sheffield,* 768 S.W.2d 590, 592 (Mo.App.1989); and *State v. Anderson,* 645 S.W.2d 251 (Tenn.Cr.App.1982).

Even if we choose to misapply diversion case law to sentencing processes, the majority still fails to provide authority justifying the result in this case.[5] The case law would follow a principle recently restated:

> It was, accordingly, incumbent upon the trial court to determine first whether there were any "grounds for denial" * * *.

*State v. King,* 156 N.J.Super. 42, 383 A.2d 443, 445 (1978). The case then reflects that "[t]he record here is barren of any such findings or expression of reasons." *Id.* 383 A.2d at 445.

The writers of the Wyoming Constitution spoke to a prohibition of this character of "discretion": "Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." Wyo. Const. art. 1, § 7.

Consequently, I again dissent as I did in *Billis,* 800 P.2d 401 (Nos. 88–250, 304, 310, 311, 312 and 89–4, 10/5/90) and will continue hereafter for each appeal under the responsibilities impressed on this office to support, obey and defend the Constitution of the United States and the Constitution of this state. Wyo. Const. art. 6, § 20. There is a firmly founded reason in the history of Anglo American jurisprudence now existent for at least 500 years (half of a millennium), why the power of the prosecutor is differentiated from the fact finding and discretional responsibility of the impartial judge and jury. For this case, as a clear factual illustration, the historical Wyoming sentencing structure utilized since 1907 should be continued in its eighty year

5. Diversion prosecutorial discretion veto usage is cogently delineated in *State v. Kirchdoerffer,* 156 N.J.Super. 172, 383 A.2d 732, 734 (1978): [T]he * * * judge should determine whether in the totality of the circumstances presented in this case: (1) the prosecutor's refusal to consent, based solely on the nature of the offense charged, was appropriate; and (2) the

prosecutor's refusal was based on a patent and gross abuse of his discretion. *See also Leonardis,* 375 A.2d 607. *Kirchdoerffer* was reversed and remanded for "further consideration, findings and determination" since the record presented no justification for the prosecutorial veto *even within the diversion status of the case. Kirchdoerffer,* 383 A.2d at 734.

prospective of the differentiated functions between prosecutor and trial judge.

MACY, Justice, dissenting, with whom URBIGKIT, Chief Justice, joins.

I dissent. I am convinced that "new 301" violates the separation of powers doctrine for the reasons articulated in my dissent to *Billis v. State*, 800 P.2d 401 (Wyo. Nos. 88–250, 88–304, 88–310, 88–311, 88–312 and 89–4 October 5, 1990).