**Matthew MOLLMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming Appellee (Plaintiff).**

No. 89–21.

Supreme Court of Wyoming.

Oct. 5, 1990.

Mike Cornia, Appellate Counsel, Public Defender Program, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Paul S. Rehurek, Sr. Asst. Attys. Gen., Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

In this appeal, Matthew Mollman, convicted of burglary, raises the three major issues that were recently raised in *State v. Lowry*, No. 88–312 (Wyo. Oct. 5, 1990); *Vigil v. State*, No. 88–310 (Wyo. Oct. 5, 1990); *McIver v. State*, No. 88–311 (Wyo. Oct. 5, 1990); *Moon v. State*, No. 88–304 (Wyo. Oct. 5, 1990); *Magarahan v. State*, No. 89–4 (Wyo. Oct. 5, 1990); and *Billis v. State*, No. 88–250 (Wyo. Oct. 5, 1990) [800 P.2d 401]. These issues concern the constitutionality of W.S. 7–13–301 (June 1987 Repl.) ("new 301"), which provides procedures for deferral of prosecution and placement on probation without entry of adjudication of guilt in the case of first offenders.

Based upon information that Matthew Mollman, who lived across the hall from Frank Gambino in an apartment building, had been seen in the latter's apartment, law enforcement authorities interviewed Mr. Mollman concerning the theft of Mr. Gambino's portable television and a television converter box. Mr. Mollman voluntarily admitted to having taken that property without the owner's permission. The

state charged him with burglary in violation of W.S. 6–3–301(a) and (b) (June 1988 Repl.). Under a plea agreement, in exchange for Mr. Mollman's plea of guilty to the felony, the state agreed it would not seek penitentiary time at sentencing, if Mr. Mollman had no prior felony convictions, and would also consent to probation without entry of adjudication of guilt under "new 301" if the presentence investigation report revealed nothing more serious than minor traffic offenses.

The presentence investigation report revealed that Mr. Mollman had previously been convicted of careless driving, running a stop sign, vandalism, driving while under the influence, improper passing, delayed entry, and driving left of center. At the sentencing proceeding the prosecutor said that the state refused to consent under "new 301" because vandalism was more serious than minor traffic offenses. The district court judge imposed a sentence of one year's supervised probation, payment of restitution, and payment of $50 to the victims' compensation account.

 In his appeal, Mr. Mollman raises these three issues that were raised in *Lowry, Vigil, McIver, Moon, Magarahan,* and *Billis:*

1. Whether W.S. 7–13–301 (June 1987 Repl.), requiring the state's consent to the court's deferring further proceedings and placing a defendant on probation without entry of a judgment of conviction, infringes on the judicial department's sentencing power in violation of the principle of separation of powers explicitly stated in Wyo. Const. art. 2, § 1.
2. Whether 1987 Wyo.Sess.Laws, ch. 157, § 3, enacting W.S. 7–13–301 (June 1987 Repl.), was enacted in violation of Wyo. Const. art. 3, § 20, which proscribes altering or amending a bill during its passage through the legislature so as to change the bill's original purpose.
3. Whether 1987 Wyo.Sess.Laws, ch. 157, § 3, enacting W.S. 7–13–301 (June 1987 Repl.), was enacted in violation of Wyo. Const. art. 3, § 24, which mandates the passage of a bill containing only one

subject which must be clearly expressed in the bill's title.

Although the state asserts that Mr. Mollman did not adequately raise these issues in the district court and we should not consider them here for the first time, we have chosen to consider them as explained in *Lowry, Vigil, McIver, Moon, Magarahan,* and *Billis.*

Our decisions in *Lowry* and its companion cases are dispositive here. Applying our decisions in those cases, we hold that "new 301" is constitutional in terms of the three issues raised here. Accordingly, we affirm.

URBIGKIT, Chief Justice, dissenting, with whom MACY, Justice, joins.

In exercise of prosecutorial veto upon sentencing, this case portrays the bottom pit of absurdity to which an advocate's control over judicial discretion can and consequently will be taken.

In 1988, Matthew J. Mollman, age twenty-two and a University student then attending Casper College, got drunk one night and, for no particular reason and without permission, entered and removed a portable television set from an adjoining apartment. He then gave it away. An eyewitness in the apartment observed the removal and upon occurrence of the inevitable and resulting police interview, Mollman admitted what he had done.

Mollman was charged with burglary, W.S. 6–3–301(a) and (b) (a ten year, $10,000 fine offense), and a plea bargain was made:

[DEFENSE COUNSEL]: Yes, Your Honor. We have a negotiated disposition in this case.

Mr. Mollman has waived his preliminary hearing and we'll be asking the Court to review a Presentence Investigation to see if it is appropriate for treatment under the provisions of 301 [W.S. 7–13–301], and whether the Court would like to accept his guilty plea today but defer accepting it on the record or whether you would like to wait until after the review of the Presentence. That is something [prosecuting attorney] and I were discussing but our agreement is

that if he has no prior felonies, then the State has agreed to no Penitentiary time and that if the Investigation discloses that he has nothing other than minor traffic offenses, the State has agreed that this is an appropriate case for sentencing under 301.

The conditions of probation under either situation would be whatever the Court deemed appropriate by way of a fine and public defender reimbursement, and then restitution would also be an issue. There has been recovery of some property and we would have to determine from the Police Department whether all property was recovered or if this was going to require a cash restitution as well.

 \* \* \* \* \* \*

[PROSECUTING ATTORNEY]: Your Honor, that is my understanding also, that if the Presentence Investigation discloses nothing other than minor traffic offenses, the State would stipulate that this should be treated under 301.

If that is not the case, however, then the only agreement as to sentencing in this matter would be that the State would then be free to argue for Penitentiary time should there be no prior felonies.

THE COURT: All right, let's take the plea but withhold entering it in to the record until we receive that report.

Mollman then entered a guilty plea:

THE COURT: All right, to the Information then as read, how do you plead?

THE DEFENDANT: Guilty, Your Honor.

THE COURT: What is your plea?

THE DEFENDANT: Guilty.

THE COURT: We won't put that in the record at this point. It will be in the record but not made a formal part of the record until the probation report is returned because that might involve a situation where the plea would not, in fact, be accepted.

A factual basis for the plea was then established on the record to be followed:

THE COURT: I find there is a factual basis for the charge and that the plea that has not yet been accepted is being made voluntarily and without promise or force or coercion and after discussions with competent counsel of record.

An exchange followed at the subsequent sentencing after the presentence investigation report had been obtained:

THE COURT: ·\* \* \*

\* \* \*, my records indicate that the Defendant has heretofore entered a plea of guilty to the charge contained in the Information; is that correct?

[DEFENSE COUNSEL]: That is correct, Your Honor, although that plea was not taken on the record pending this Presentence Investigation for treatment under 301.

THE COURT: All right, I have received a copy of the Presentence Investigation and have reviewed the same. I presume you have had the same opportunity?

[DEFENSE COUNSEL]: Yes I have, Your Honor.

 \* \* \* \* \* \*

[DEFENSE COUNSEL]: Your Honor, we are here before the Court on the plea that was given by Mr. Mollman but was not accepted by the Court pending this review. Our disposition agreement with the State sets forth that if the Presentence Investigation disclosed nothing other than minor traffic offenses, they would agree to treatment under the provisions of 301 and that any fine or public defender reimbursement under probation would be at the discretion of the Court.

I would submit to the Court that, in fact, the Presentence Investigation has come back as we anticipated and that there are nothing but minor offenses on his record and that it would be appropriate for the Court to now place him under the provisions of Wyoming Statutes 7–13–301 and that would be to again defer acceptance of the plea, place him on probation with the terms to be set by this Court.

Mr. Mollman cooperated fully with the agent in the preparation of this Report,

and there has been an indication that there is restitution to be paid and I think that that is not a problem, and Mr. Mollman will make whatever restitution needs to be paid. He has been working and has been very good at reporting to my office even though he has been out of State under an agreement that his bond allows him to work out of State.

I think he is a good candidate for this treatment. He has been very cooperative and will continue to do well on probation. At his age, I think it is appropriate that we consider this treatment. Hopefully this was an isolated act that will not occur again and I think that it is appropriate to give him this opportunity to keep a felony off of his record.

\* \* \* \* \* \*

[PROSECUTING ATTORNEY]: Your Honor, the agreement with the Defendant was that as long as the Presentence Investigation discloses nothing other than minor traffic offenses, that he should receive 301 treatment. Your Honor, I see a vandalism, a driving while under the influence—which perhaps could be considered to be a minor traffic offense—but vandalism would not be.

Your Honor, the State would recommend that the Defendant be sentenced to two years of supervised probation; that this Court enter the plea on the record; that he undertake any counseling and perform any community service as is recommended by the Department of Probation and Parole; that he pay restitution as determined by the Department of Probation and Parole; and that he pay $50 to the Victims Compensation Fund within 10 days from today's date.

THE COURT: Does that mean the State does not agree to treatment under 301?

[PROSECUTING ATTORNEY]: Yes, Your Honor.

The vandalism incident was then described by Mollman in this sentencing session:

THE DEFENDANT: I have one question. What is the vandalism that they are talking about?

THE COURT: Well, why don't you tell me about that?

THE DEFENDANT: Okay, on that vandalism, a friend of mine with me was out drinking on that evening too, and I went out and I talked to the Judge and the City person down at Glenrock and I told them I would repair it, and I repaired it, did all the work myself and paid for it and fixed it all up to their satisfaction. There were walls on the bathroom that I wrecked like a wooden barrier on the outside and we had broke [sic] some of the wooden parts. It originally, one of them got broke originally by me and this friend of mine wrestling around and we went through one of the pieces that was like a plywood wall out there, and then we thought it was kind of fun because we was [sic] drinking and stuff, so we broke a couple more, and then the officer came down and talked to us about it, and we told him what happened and everything, and we said that we would fix everything, and we repaired everything ourselves.

THE COURT: All right.

Do you have anything further to say before Sentence is passed?

I think probably this is a case I would have handled under 7–13–301 if I had the discretion, but as I understand the Statute, I don't have.

The testimony given by Mollman about the "vandalism incident" was not challenged by other evidence. The only other evidence was an entry on the presentence investigation report involving the incident some three years earlier which stated: "12/29/85, Vandalism, Glenrock, Wyoming, Fine suspended, damages repaired."

What this means in this record is that Mollman has been punished by imposition of the felony conviction status which includes loss of citizenship rights and sportsman privileges because at age twenty-two while "horsing around," some damage to a Glenrock, Wyoming apartment was done which was then repaired. Whether or not there is any conviction resulting from that offense is seriously in question.

In reality, the prosecutor probably exercised his veto because of the driving while

under the influence charge, but felt he was safer in breaking the plea bargain on a vandalism explanation. Either way, the result is senseless and question exists whether plea bargain sentencing performance could not have been appropriately applied.

Taken to the essence, we have in this case prosecutorial exercise of a sentencing veto over a perhaps unprosecuted vandalism charge. This is status prosecution; prosecutorial responsibility directed neither to inhibit nor to rehabilitate, but only to damage, harm and inflict maximum pain for permanent lifetime activity inhibitions otherwise normally pursued or enjoyed by each person who is favored to survive past college age "mistakes." If this vandalism misconduct justifies a felony conviction, there will only be a few of us who will be left to either vote or "keep and bear arms."

Based on the totally contrary case law and authoritative precedent which is adapted no better to this case than others currently under review, I again dissent. *See Billis v. State*, 800 P.2d 401, 435 (Wyo. 1990) (Nos. 88–250, 304, 310, 311, 312 and 89–4, 10/5/90), Urbigkit, Chief Justice, dissenting; *Heggen v. State*, 800 P.2d 475 (Wyo.1990) (No. 89–84, 10/5/90), Urbigkit, Chief Justice, dissenting; *Hudson v. State*, 800 P.2d 471 (Wyo.1990) (No. 89–83, 10/5/90), Urbigkit, Chief Justice dissenting; and *Cambio v. State*, 800 P.2d 482 (Wyo.1990) (No. 89–169, 10/5/90), Urbigkit, Chief Justice, dissenting.[1]

MACY, Justice, dissenting, with whom URBIGKIT, Chief Justice, joins.

I dissent. I am convinced that "new 301" violates the separation of powers doctrine for the reasons articulated in my dissent to *Billis v. State*, 800 P.2d 401 (Wyo. Nos. 88–250, 88–304, 88–310, 88–311, 88–312 and 89–4, Oct. 5, 1990).

---

**1.** An interested examiner on these not so only academic subjects are directed to the most current literature, Mank, *Rewarding Defendant Cooperation Under the Federal Sentencing Guide-*

*lines: Judges vs. Prosecutors,* 26 Crim.L.Bull. 399 (1990); Schwartz, *Curiouser and Curiouser: The Supreme Court's Separation of Powers Wonderland,* 65 Notre Dame L.Rev. 587 (1990).